WESTERN CONDENSING COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.*

*October 10—November 5, 1952.*

---

* Motion for rehearing denied, with $25 costs, on January 6, 1953.

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents there was a brief by *Benton, Bosser, Becker, Parnell & Fulton* of Appleton, and oral argument by *David L. Fulton.*

BROADFOOT, J.   The Western Condensing Company is a California corporation with its home office at San Francisco. It maintains a western division office at San Francisco and an eastern division office at Appleton, Wisconsin. It is engaged in the processing of milk and the manufacturing of milk by-products, and it operates plants in ten states, with several of them in Wisconsin.

Herbert L. Asplin was first employed by the company at Owen, Wisconsin, in 1937. He was also employed by the company at Durand and later at Appleton. During the early part of August, 1947, he was offered a position as manager of the company's Portland, Oregon, plant, with an increase in salary. He left Appleton for Portland on August 27th, and started his new position about September 1st. His own expenses of travel were paid by the company and he was to be paid his personal living expenses including hotel, meals, and laundry until he moved his family to Portland. He was also to receive the expenses of moving his family. Notice of termination of tenancy was given to the owner of the home which he rented in Appleton, and a trucking company had been contacted with reference to moving their household goods and personal effects. On the evening of September 14, 1947, Asplin called his wife at Appleton with reference to prospective housing accommodations.

At Portland Asplin was subject to call twenty-four hours a day. He was last seen alive by a fellow employee in his office at the plant at about 1:45 on the morning of September 15th. At about 2:05 a. m. his body was discovered lying across a railroad track near the Union station in Portland, with his head and a portion of one shoulder severed.

The examiner found that the deceased was a resident of Wisconsin at the time of the making of the contract and that up to the time of his death he had no intention of giving up Wisconsin as his residence. He also found that the deceased was going to the Union station to make necessary arrange-

ments for transportation of his wife and children to Portland, and that therefore he sustained a fatal injury while performing services growing out of and incidental to his employment with the company, and that the accident causing his death arose out of said employment. These findings in particular were challenged by the company.

The first question presented is the jurisdiction of the defendant commission. Sec. 102.03, Stats., provides in part:

"(1) Liability under this chapter shall exist against an employer only where the following conditions concur:
"(a) Where the employee sustains an injury.
"(b) Where, at the time of the injury, both the employer and employee are subject to the provisions of this chapter.
"(c) Where, at the time of the injury, the employee is performing service growing out of and incidental to his employment. . . ."

Asplin was born and raised in Wisconsin, and had been an inhabitant of the state until he went to Portland. His wife and children were born in this state, his parents, who were elderly persons, and his wife's parents also resided here. The record shows that for more than ten years prior to August 27, 1947, the company and Asplin were employer and employee subject to the provisions of the Wisconsin Workmen's Compensation Act. That status continued until he acquired a residence elsewhere. His domicile being established in this state, he retains it until he acquires one in another state. *Baker v. Department of Taxation*, 246 Wis. 611, 18 N. W. (2d) 331.

"When residents of the state contract for service to be performed outside the state, a constructive status under the Wisconsin Compensation Act is created, which continues until the employee acquires an actual status as an employee in some other state. The situation is not unlike that presented when a question of residence is involved. A person, generally speaking, can have but one legal residence, which,

once established, persists until a new residence is acquired elsewhere.

"The power of the state to impose such rights and duties as an incident to contracts of employment to be performed outside the state is dependent upon the existence and the continuance of a status, actual or constructive, which makes both the employer and the employee subject to the Wisconsin Compensation Act. When that status no longer exists, the power of the state to prescribe the respective rights and liabilities of employers and employees for injuries sustained outside the state is at an end." *Val Blatz Brewing Co. v. Industrial Comm.* 201 Wis. 474, 482, 230 N. W. 622.

There is no evidence, except by inference, that Asplin had given up his status as a Wisconsin resident. Maynard Burke, a fellow employee at Portland who succeeded to Asplin's position as manager after his death, testified that it was his belief, based on conversations with Asplin, that he would return to Wisconsin if he was transferred. Another witness, Chester Harbor, testified that in the case of certain contingencies Asplin intended to return to Wisconsin. Mrs. Asplin also testified that Wisconsin was his home and he was very emphatic about wanting to stay there; that he intended to make good at his Portland job, but he did not want to stay there. This testimony was received without objection. The record discloses enough competent evidence to sustain the finding of the examiner and of the commission that his residence was in Wisconsin. It follows that the commission had jurisdiction.

The second question to be determined is as follows: Did Asplin sustain fatal injury while performing service growing out of and incidental to his employment, and did the accident causing injury arise out of said employment? There is competent evidence in the record to sustain the finding that the deceased was going to the Union station to make the necessary arrangements for transportation of his wife and children to Portland. The respondents contend that this was a per-

sonal errand of the deceased, that Asplin was performing no service for his employer in arranging for family transportation, and there was no financial or other benefit to the employer from having Asplin's family join him.

We cannot agree with this contention. Until his family did reach Portland the employer was to pay all of Asplin's personal living expenses. The record does not disclose the amount thereof, but it does show that he lived in a Portland hotel, and it is fair to assume that he ate regular meals and had expenses for laundry and other personal living expenses. It is certain that such per diem expenses were considerable and that the employer would be relieved of a substantial cash expenditure upon the arrival of the family.

The rule to be applied in a situation such as this has been stated as follows:

"This court has held that the statute must be liberally construed in favor of including all service that can in any sense be said to reasonably come within it. *Brienen v. Wisconsin Pub. S. Co.* 166 Wis. 24, 163 N. W. 182. In view of the construction heretofore given the statute, it is quite clear that there was evidence in this case from which the commission could reasonably draw the conclusion that the service the employee performed was within the scope of and incidental to his employment because its performance inured to the benefit of the employer." *Kimberly-Clark Co. v. Industrial Comm.* 187 Wis. 53, 55, 203 N. W. 737.

"A proper consideration of the purposes of the compensation law requires the conclusion that Whyte's injury grew out of and was incidental to his employment. The law must be liberally construed in favor of including all service that can be reasonably said to come within it. *Severson v. Industrial Comm.* (1936), 221 Wis. 169, 266 N. W. 235. Moreover, it is contrary to the interests of the employer, the employee, and the public generally to deny compensation to an injured employee on the ground that he must refrain from doing work in his employer's interest that he is not specifically authorized to do. Such a construction would reward the slothful and penalize the enterprising employee, and would

impair industrial efficiency. *Hartz v. Hartford Faience Co.* (1916), 90 Conn. 539, 97 Atl. 1020." *Anderson v. Industrial Comm.* 250 Wis. 330, 333, 27 N. W. (2d) 499.

The rule was correctly applied to the facts; the determination of the examiner and the commission is supported by competent evidence, and under the statute we cannot disturb it.

*By the Court.*—Judgment reversed, and cause remanded with directions to affirm the award of the Industrial Commission.