759 P.2d 65

**David KIRKPATRICK,
Claimant–Respondent,**

v.

**TRANSTECTOR SYSTEMS, Employer,**

and

**General Insurance Company of America,
Surety, Defendants–Appellants.**

**No. 16985.**

Supreme Court of Idaho.

July 20, 1988.

Eismann & Kosonen, Coeur d'Alene, for defendants-appellants. Samuel Eismann argued.

Thomas A. Mitchell, Coeur d'Alene, for claimant-respondent.

**560**

HUNTLEY, Justice.

Transtector Systems, Inc., (Transtector), and General Insurance Company, (General), surety, appeal the Industrial Commission's determinations that respondent David Kirkpatrick was injured while in the course and scope of his employment for Transtector; that the workers compensation laws of Idaho, rather than Ohio, apply; and that Kirkpatrick is entitled to an award of attorney fees pursuant to I.C. § 72–804. The issues arise out of injuries sustained by Kirkpatrick in an automobile accident in Columbus, Ohio, on Saturday, November 10, 1984. Kirkpatrick had arrived in Columbus on November 9, 1984, after a week of travelling to various cities on business for Transtector. He was scheduled to travel the following week to Raleigh, North Carolina, and some other cities, whereupon he would return to Columbus to establish a Transtector office there and assume the position of district manager for a territory to include most of Ohio and part of West Virginia.

David Kirkpatrick began working for Transtector as an accounts representative in 1983, living in Spokane, Washington. Transtector was based in Hayden Lake, Idaho. In September, 1983, Transtector determined that, rather than continuing to have its sales people based out of the corporate office in Hayden Lake, it would open sales offices in various parts of the country. It was to one of these positions that Kirkpatrick was promoted. In mid-October 1984, Kirkpatrick and his wife went to Ohio for several days to determine whether they would enjoy living in that area. While there, they paid a deposit for rental of a townhouse, which deposit was subsequently returned by the owners after rejecting Kirkpatrick's rental application. When Kirkpatrick arrived in Columbus on November 9, 1984, he checked into the Holiday Inn at Transtector's expense. Transtector also furnished the vehicle Kirkpatrick used when driving in Columbus.

Early on November 10, 1984, Doug Hadley, another Transtector representative, arrived in town. Together, they worked to complete required weekly reports and coordinated their schedules with each other.

Additionally, they prepared for a meeting they were to have with several corporate clients scheduled for Monday, November 12. They had lunch together, returned to the motel and completed more reports. Later in the evening, at approximately 6:00 o'clock, they drove downtown to the Eagles Club, where they continued to discuss coordinating their work schedules to rendezvous in Dayton, Ohio, two or three weeks later. They both drank three to four beers, and Kirkpatrick testified that he played the piano for some time while at the Eagles Club.

As Kirkpatrick was driving back to the hotel, Hadley and Kirkpatrick were in a single-car accident. Neither Hadley nor Kirkpatrick were drinking when the accident occurred.

On Monday, November 12, 1984, Transtector effected a payroll change, transferring Kirkpatrick from "clerk" status to "district manager" for Ohio. However, Transtector still did not, at that time, have a business office in Ohio. General does not insure worker's compensation in Ohio, and Transtector had not yet, at that time, purchased any worker's compensation insurance in Ohio.

Before the Commission, Transtector and General argued that the laws of Ohio, rather than Idaho, applied as Kirkpatrick was allegedly a domiciliary of Ohio. General and Transtector further argued that Kirkpatrick was not operating within the course and scope of his employment when injured in the car accident, as Kirkpatrick and Hadley were on a "personal pleasure trip" at the time of the accident. The Commission concluded that the workers compensation laws of Idaho, rather than Ohio, applied, as Kirkpatrick's employment had yet to be "principally localized" in Ohio. Further, the Commission found that Kirkpatrick was operating within the course and scope of his employment when the accident occurred, relying upon the "travelling employee" doctrine. The Commission then awarded attorney fees equal to 25% of all compensation already paid by General to Kirkpatrick, and 25% of all compensation to be paid in the future, pursuant to I.C.

§ 72–804. General had paid total temporary disability benefits to Kirkpatrick amounting to $17,315.99, and medical bills totaling $16,502.39, for a sum of $33,818.38 from November 12, 1984 through February 16, 1986. On February 26, 1986, a claims adjustor newly assigned to Kirkpatrick's case notified Kirkpatrick that General would seek an Application for Hearing before the Industrial Commission, as she believed that Ohio laws might apply and that Kirkpatrick might have been operating outside the course and scope of his employment at the time of the accident.

There are three issues before us on appeal: (1) Whether the workers compensation laws of Idaho or Ohio control the disposition of the instant case; (2) Whether Kirkpatrick was operating within the course and scope of his employment for Transtector when injured; and (3) Whether an award of attorney fees pursuant to I.C. § 72–804 is appropriate and, if so, to what extent.

## THE WORKER'S COMPENSATION LAWS OF IDAHO APPLY

Transtector and General argue that, while on his trip to Ohio, Kirkpatrick had abandoned his residence in Washington and established a new residence in Ohio, noting that a change of residence may be accomplished in only one day. *Robinson v. Robinson*, 70 Idaho 122, 129, 212 P.2d 1031, 1035 (1949). They rely, in main, upon Kirkpatrick's testimony that, after his business travel scheduled for the week following his accident, which included travel to Kentucky, he would have returned to Columbus, Ohio, to assume the new position of district manager. We disagree with appellants.

The pertinent jurisdictional statutes are I.C. § 72–217 and I.C. § 72–220(1). Idaho Code § 72–217 sets forth Idaho's jurisdictional limitations with respect to extraterritorial coverage:

Extraterritorial coverage.—If an employee, while working outside the territorial limits of this state, suffers an injury or an occupational disease on account of which he, or in the event of death, his dependents, would have been entitled to the benefits provided by this law had such occurred within this state, such employee, or, in the event of his death resulting from such injury or disease, his dependents, shall be entitled to the benefits provided by this law, provided that at the time of the accident causing such injury, or at the time of manifestation of such disease: (1) His employment is principally localized in this state; or (2) He is working under a contract of hire made in this state in employment not principally localized in any state; or (3) He is working under a contract of hire made in this state in employment principally localized in another state, the workmans compensation law of which is not applicable to his employer; or (4) He is working under a contract of hire made in this state for employment outside the United States and Canada.

The Industrial Commission specifically concluded that Kirkpatrick's employment was, at the time of the accident, still principally localized in Idaho. We agree. Idaho Code § 72–220(1) defines the term "principally localized."

Locale of employment.—(1) A person's employment is principally localized in this or another state when: (a) his employer has a place of business in this or such other state and he regularly works at or from such place of business; or (b) he is domiciled and spends a substantial part of his working time in the service of his employer in this or such other state.

The Commission based its conclusion that Kirkpatrick had failed to establish a domicile in Ohio upon the fact that Kirkpatrick had no personal residence in Ohio at the time of the accident, and was staying at the Holiday Inn, at Transtector's expense, at the time of the accident. We agree, but also view it as significant that Transtector had yet to establish a district sales office in Ohio or, indeed, any office of place of business there. Additionally, Kirkpatrick was not even transferred to the status of "district sales manager" on Transtector's payroll records until after the accident occurred.

For a change of domicile to occur, the fact of physical presence at a dwelling place and the intention to make it a home must concur. And when such domicile is established, it persists until another is legally acquired. *In re Estate of Cooke*, 96 Idaho 48, 524 P.2d 176 (1973); Restatement (Second), Conflict of Law § 19 (1971). Similarly, once a worker's employment is principally located in a state, it remains localized in that state until it becomes principally localized in another. *Western Condensing Co. v. Industrial Commission*, 262 Wis. 458, 55 N.W.2d 363 (1952). We agree with the Commission that, on these facts, no clear intention on Kirkpatrick's part was ever evidenced indicating that Ohio was, at the time of the accident, yet his home. Further, Transtector had yet to establish any office in Ohio and, therefore, Kirkpatrick's employment was still "principally localized" in Idaho. Accordingly, we affirm the Commission's determination that Idaho laws apply.

## KIRKPATRICK WAS OPERATING IN THE COURSE AND SCOPE OF HIS EMPLOYMENT AT THE TIME OF THE ACCIDENT

This Court's scope of review over findings of fact made by the Industrial Commission is limited. Factual findings will be upheld on appeal if supported by substantial, competent evidence. *Nigherbon v. Ralph E. Feller Trucking, Inc.*, 109 Idaho 233, 706 P.2d 1344 (1985); *Lopez v. Amalgamated Sugar Co.*, 107 Idaho 590, 691 P.2d 1205 (1984).

Here, the Industrial Commission relied upon the "travelling employee" doctrine, which provides that when an employee's work requries him/her to travel away from the employer's premises, he/she will be held to be within the course and scope of his/her employment continuously during the trip, except when a distinct departure for personal business occurs. For example, under the "travelling employee" doctrine, injuries which arise out of necessities such as sleeping or eating are compensable. *Ridgway v. Combined Insurance Companies of America*, 98 Idaho 410, 565 P.2d 1367 (1977). See also, *Manion v. Waybright*, 59 Idaho 643, 86 P.2d 181 (1938), wherein this Court established a rebuttable presumption that an employee driving an employer's car is operating in furtherance of the employer's business. Here, the "travelling employee" doctrine is merely an additional rationale under which liability could have been imposed upon Transtector. The Commission specifically found that "at the time of the accident, the claimant was discussing business with a co-worker in a company-provided car." These facts are supported by substantial, competent evidence and, irrespective of the "travelling employee" doctrine, they impose liability upon Transtector for Kirkpatrick's injuries sustained during the accident. The record further shows that, while discussing business, Kirkpatrick and Hadley had driven to downtown Columbus to locate the offices of the businesses with which they would be meeting on Monday, November 12, 1984. The Commission's finding that Kirkpatrick was operating within the course and scope of his employment at the time of the accident is affirmed.

## ATTORNEY FEES

The Commission ordered attorney fees pursuant to I.C. § 72–804[1] in the amount of 25% of all benefits paid in the past and to be paid in the future to Kirk-

1. I.C. § 72–804 provides:
   If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or a dependent of a deceased employee without reasonable ground, or that an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the injured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation as provided by law justly due and owing to the employee or his dependents, the employer shall pay reasonable attorney fees in addition to the compensation provided by this law. In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission.

patrick, concluding that there were no reasonable grounds upon which their Application for Hearing could have been brought. We agree. However, we also agree with Transtector and General, and Kirkpatrick concedes, that the attorney fees should only be based upon a percentage of compensation paid from the time Transtector's Application for Hearing was filed, May 21, 1986. As the Commission has deemed 25% a reasonable percentage of the compensation paid to be awarded, we hold that percentage appropriate and order that attorney fees in the amount of 25% of all compensation paid to Kirkpatrick by Transtector and General from the date of May 21, 1986, be awarded.

■ As we agree with the Commission that the proceeding was brought without reasonable ground, we necessarily conclude that the appeal was also brought without reasonable ground, with the exception of our slight modification of the attorney fee award. Accordingly, we also award attorney fees on appeal pursuant to I.C. § 72–804, and order attorneys for respondent Kirkpatrick to submit to this Court an accounting of fees incurred in preparing for and arguing as to each of the issues before this Court on appeal. We will then make an award of attorney fees which accounts for Transtector's legitimate and reasonable argument on the attorney fee issue. Costs to respondent.

SHEPARD, C.J., and BISTLINE, J., concur.

JOHNSON, Justice, specially concurring.

While I concur in the result reached by the majority in this case, I would premise the holding that the worker's compensation laws of Idaho apply on I.C. § 72–217(2) rather than I.C. § 72–217(1).

The majority opinion agrees with the conclusion of the Industrial Commission that Kirkpatrick's employment was, at the time of the accident, still principally localized in Idaho. In my opinion, Kirkpatrick was working under a contract of hire made in Idaho and was "in employment not principally localized in any state." I.C. § 72–217(2).

The decision of the Industrial Commission and of this Court is premised on the conclusion that Kirkpatrick's employment remained localized in Idaho until it became localized in another state. *Western Condensing Co. v. Industrial Commission,* 262 Wis. 458, 55 N.W.2d 363 (1952). In my view, this principle conflicts with the clear language of I.C. § 72–220(1). The record here does not demonstrate that at the time of his injury Kirkpatrick regularly worked at or from Transtector's place of business in Idaho, nor that he spent a substantial part of his working time in the service of Transtector in Idaho. Therefore, I conclude that his employment was not principally localized in Idaho. Likewise, the record here does not demonstrate that Transtector had a place of business in Ohio at or from which Kirkpatrick regularly worked, nor that he was domiciled in Ohio and spent a substantial part of his working time in that state. Therefore, I conclude that Kirkpatrick's employment was "not principally localized in any state," and that I.C. § 72–217(2) applies to provide coverage for his injuries.

BAKES, Justice, dissenting:

I do not believe that the findings in this case were based on a clearly one-sided record or that the resulting legal determinations were capable of resolution without significant deliberation. Therefore, I find the commission's imposition of attorney fees below and the majority's imposition of attorney fees on appeal based on I.C. § 72–804 to be inappropriate and uncalled for in this case.

One need only read the majority's opinion to realize that both the legal and the factual conclusions made in this case were very close calls and could have gone either way. I.C. § 72–804 authorizes the award of attorney fees only in situations where both the factual and the legal issues are *not* subject to honest dispute. Under I.C. § 72–804 the Industrial Commission can assess attorney fees when an employer or his surety "contests a claim for compensation

without reasonable ground." However, the statute does not permit the imposition of attorney fees where there are justiciable factual or legal issues. The question in this case, therefore, is whether the surety acted unreasonably when it exercised its statutory right to seek a hearing before the Industrial Commission on the question of whether (1) Ohio law, rather than Idaho law, should apply to this case, and (2) whether or not the claimant was within the course and scope of his employment when he was returning from an evening's eating, drinking and singing at the Eagles Lodge when the accident occurred at 9:30 p.m.

The commission found that:

"The claimant in this case is entitled to an award of attorney fees because *the defendant had no reasonable ground for asserting that Idaho had no jurisdiction over the claimant's claim or that the claim was not in the course of his employment when the accident occurred.*" (Emphasis added.)

However, the record, and even the commission's own findings of fact, demonstrate that there were conflicting facts which make the final legal determination of whether Idaho or Ohio law applied to this case a difficult factual and legal question.

The claimant lived in the State of Washington, but he worked for an Idaho company; however, most of the work was performed outside the State of Idaho. Several weeks prior to the accident, the company had determined to open a regional sales office in Ohio, and the claimant was promoted from sales representative to the position of district sales manager of the new Ohio office and was transferred to that location. Pursuant to that promotion he terminated his residence in the State of Washington, had all of his furniture and belongings moved by a moving company to Ohio, and he then flew to Ohio to open the company office there and to obtain a residence in Ohio. He had in fact made a deposit on an apartment in Ohio prior to the time the accident occurred. Based upon that record, a finder of fact could justifiably have concluded that claimant's employment was now in the State of Ohio,

and not in the State of Idaho, which would have made Ohio law controlling and the Ohio Industrial Commission have the jurisdiction over any claim. The fact that the Industrial Commission ruled to the contrary does not make the factual issues and the choice of law question any less of a triable issue in this case.

Choice of law questions are never easily determined because of the varying interests involved. This case is no different.

"It has been said that the field of conflict of laws, more than almost any other field in law, is in a growing state, and that, being the most under-developed field in American jurisprudence from a practical standpoint, it is still breaking loose from the 'ritualistic' thinking of the last century toward a flexible and articulate selection of the laws governing multistate transactions. .... But the difficulties and problems involved in devising 'black-letter rules' which are satisfactory to cover all situations have often been noted by both the textwriters and the courts." 16 Am.Jur.2d Conflict of Laws § 1 (1979) (footnotes omitted).

In fact, by its very definition, when a conflict of laws exists no instant resolution to such a legal question is readily available.

"The Restatement Second of the Law of Conflict of Laws, published by the American Law Institute in 1971, defines 'conflict of laws' as that part of the law of each state which determines *what effect is given to the fact that the case may have a significant relationship to more than one state;* 'local law' as the body of standards, principles, and rules, exclusive of its rules of conflict of laws, which the courts of that state apply in a decision of controversies brought before them, and 'law' of a state as that state's local law, together with its rules of conflict of laws." 16 Am.Jur.2d Conflict of Laws § 1 (1979) (footnotes omitted, emphasis added).

The majority opinion in effect holds the surety to a higher standard of understanding than the judiciary of this country which at the present time has been unable to resolve with any unanimity the difficult conflict of law questions that are presented in these cases.

Likewise, in this case there were triable issues of fact with regard to whether or not Kirkpatrick was operating in the course of his employment at the time of the accident. The accident occurred on a Saturday evening at 9:30 p.m. well after normal working hours. The evidence shows that Kirkpatrick and another Transtector employee went out to supper around 4:30–5:30 p.m. They drank a beer during the dinner and then after a short stop at the hotel they proceeded to the Columbus Eagle Lodge where they drank beer and Kirkpatrick played the piano for several hours. On the way back to their hotel from the Eagles Lodge they stopped and purchased beer. Shortly after this stop the accident occurred.

There was certainly a triable issue of fact over whether or not claimant was within the course of his employment at the time of the accident. The resolution of this factual issue could be entirely different if Ohio law was applicable. Thus, the answer to the factual question of whether claimant was within the course of his employment at the time of the accident was directly related to the choice of law question. The resolution of these issues were valid legal and factual questions to be brought before the Industrial Commission by the surety.

In sum, the surety did not act unreasonably when it sought the Industrial Commission's (and later this Court's) adjudication of the two interrelated issues presented in this appeal. As noted by the majority, the surety did not withhold benefits. It voluntarily paid the claimant over $30,000 in benefits before it brought the question of whether Idaho or Ohio law applied, and whether the accident occurred in the course of the employment, before the Industrial Commission. Seeking a resolution of both these legal and factual issues, based on this record, cannot be considered unreasonable. Accordingly, attorney fees should not have been granted, either by the commission or by this Court on appeal.