796 P.2d 1020

**Lewis Hulbert MORGAN, Jr., Claimant–Appellant,**

v.

**COLUMBIA HELICOPTERS, INC., Employer, and North River Insurance Company, Surety, Defendants–Respondents.**

No. 17838.

Supreme Court of Idaho.

Aug. 21, 1990.

Clemons, Cosho & Humphrey, Boise, for claimant-appellant. Frederic V. Shoemaker, argued.

Quane, Smith, Howard & Hull, Boise, for defendants-respondents. Alan K. Hull, argued.

BISTLINE, Justice.

Lewis Morgan was employed as a project manager for Columbia Helicopters, a firm which is engaged in helicopter logging operations. During the summer of 1984, Morgan was project manager for at least three job sites in Idaho. Morgan and his crew moved to the third of these job sites, called Tamarack Falls, during the second week in August. The Tamarack Falls job site was located approximately seven miles east of Donnelly, Idaho. During the course of a job, the crew generally lived in campers at or near the job site. While working at the Tamarack Falls job site, Morgan lived in his camper approximately two miles from the site. All members of the crew, including Morgan, were paid an $18.50 per diem for the additional expenses they incurred by living and eating away from their homes. Morgan's home at this time was a residence located approximately one mile south of Sweet, Idaho. He stayed at his camper near the job site during the week and returned to his home at Sweet on weekends when he was able to do so.

As project manager, Morgan was responsible for hiring and supervising employees, determining hours of operation, and in general for control over the logging site, including any equipment used by the crew. He had authority to engage the services of outside mechanics to make repairs on equipment when necessary. One of Columbia Helicopters' pickup trucks had sustained damage which Morgan decided to have repaired. He sought out David Stricker, a mechanic who lived and worked in Crouch and with whom Morgan was acquainted, and indicated to Stricker that he would make arrangements for repairs when the use of the truck was not essential.

In addition to a monthly salary and a per diem expense allowance, Morgan was provided with a company pickup truck for his use on company business, both on and off the job site, and to drive to and from his home or camper to the job site. Morgan was also permitted to use the truck for incidental personal errands.

On Friday, August 17, 1984, Morgan departed the job site at about 6:00 p.m. and drove the company pickup truck to his home in Sweet. From past experience Morgan had learned that it was best to deal with Stricker in person, because Stricker did not have a telephone and messages left with others proved unreliable. So on Saturday, August 18, 1984, Morgan left his home in Sweet at approximately 8:00 p.m., intending to meet with Stricker in Crouch concerning repairs to the damaged pickup truck, although he had not previously arranged the meeting. Morgan drove his company pickup. He took the most direct route to Crouch, driving east from Sweet on Highway 52 to Horseshoe Bend and then north on Highway 55 to Banks. On his way to Banks he stopped at a bar called the Ponderosa, where he had two drinks, played pool, and talked to the bartender. He left the bar around 8:30 p.m. and arrived in Crouch at about 9:00 p.m. He went directly to the Longhorn, a cafe and bar in Crouch, which was a community social meeting center. Stricker lived directly across the street from the Longhorn, and Morgan had met him there before. Stricker was in fact at the Longhorn that evening. At the Longhorn the two men discussed the repair of the pickup, and they agreed that Stricker would acquire the necessary materials and that precise arrangements about when the work would be done would be made later. While at the Longhorn Morgan had several drinks.

Stricker is a reserve deputy sheriff. While he and Morgan were at the Longhorn, a fight occurred at a dance hall some distance away, and Stricker was called to the scene. Morgan accompanied Stricker to the dance hall, where they stayed for approximately forty-five minutes. They then returned to the Longhorn, where Morgan continued to talk with Stricker and a number of other acquaintances. Morgan had several more drinks. He conceded that during the evening he consumed 8–10 drinks containing a total of approximately a fifth of alcohol.

Morgan left Crouch at about 1:15 a.m., after the bar had closed. He took the same direct route he had taken earlier that night.

While in Horseshoe Bend he stopped to see an acquaintance who was not home. He then drove west from Horseshoe Bend toward Sweet on Highway 52. He concedes that he was in an alcoholic blackout at times during the trip. While on Highway 52, the company pickup Morgan was driving partially crossed the center line of the road and struck an oncoming vehicle. The driver of the other vehicle was killed, and Morgan was injured. At the hospital, Morgan's blood/alcohol level was measured at .20 percent. Morgan eventually pled guilty to a charge of vehicular manslaughter and was jailed for that offense.

On August 16, 1985, Morgan filed for workers' compensation benefits. Several affirmative defenses were raised. After lengthy discovery, Morgan moved for a bifurcation of the case, seeking a hearing limited to the issue of whether the accident arose out of and in the course of his employment. Columbia Helicopters agreed to a hearing on that issue but requested that the initial hearing should also address the issue of whether Morgan's intoxication should limit or bar his recovery of benefits. The May 10, 1988 hearing before Referee Robert Youngstrom focused on both issues. The referee's findings of fact, conclusions of law, and order were adopted by the Commission.

The Commission found that Morgan's drinking was the proximate cause of the collision and Morgan's resultant injuries. The Commission then went on to determine whether any of the exceptions to the "going and coming" rule would apply so as to extend coverage to Morgan. The special or peculiar risk rule and the special errand rule were dismissed by the Commission as inapplicable; the application of the traveling employee rule and the dual purpose rule became the focus of the inquiry. Acknowledging that the traveling employee rule and the dual purpose rule might otherwise have applied to the circumstances of this case, the Commission concluded that Morgan's non-work-related activities on the evening of August 18, 1984 "amounted to such a deviation from the business purpose" of the trip that Morgan should be denied coverage. It is from this ruling that Morgan appeals.

In workers' compensation cases the claimant bears the burden of proving that the injury complained of arose both "out of and in the course of his [or her] employment." *Callantine v. Blue Ribbon Linen Supply,* 103 Idaho 734, 653 P.2d 455 (1982). In a case involving the "traveling employee" rule, "[t]he employee retains the burden of showing that he is an employee, that the accident occurred while [he was] traveling at the behest of his employer, and that he was engaged in reasonable activities at the time of the accident. Once these elements have been proved, the presumption is that any resulting injury is compensable." *Ridgway v. Combined Ins. Cos.,* 98 Idaho 410, 414–15, 565 P.2d 1367, 1371–72 (1977) (Bistline, J., concurring).

■ The traveling employee is not "entitled to portal to portal coverage away from home," however. *Ridgway v. Combined Ins. Cos.,* 98 Idaho 410, 412, 565 P.2d 1367, 1378 (1977). "[T]here will always be room for reasonable minds to disagree as to precisely where the line should be drawn between activities which are reasonably incidental to one's employment and deviations which are so purely personal as to be without any substantial causal connection to one's employment." *Id.,* 98 Idaho at 417, 565 P.2d at 1374 (Bistline, J., concurring). Thus, the inquiry to be engaged in by both the Commission and this Court when faced with cases of this sort is whether the departure from the claimant's employment became so personal that it broke the causal connection to such an extent that the resulting accident could no longer be said to "arise out of and in the course of" the claimant's employment.

■ Though it was not particularly artful in applying this standard, this was the inquiry in which the Commission engaged. Its conclusion was that the totality of the circumstances presented in this case demonstrated that Morgan's personal activities on the night of the accident were not reasonably related to his employment errand and that those activities constituted such a "deviation" that the accident could

not be considered to have arisen "out of and in the course of" Morgan's employment with Columbia Helicopters. Had we been the fact finders in this case we might have concluded differently, given our practice of interpreting the workers' compensation statutes liberally in favor of the claimant. *See, e.g., Steinebach v. Hoff Lumber Co.,* 98 Idaho 428, 566 P.2d 377 (1977). However, on appeal our task is to ascertain whether the law was applied correctly and whether there is substantial competent evidence in the record to support the Commission's decision. Idaho Const. art. 5, § 9; *Graham v. Larry Donohue Logging,* 103 Idaho 824, 654 P.2d 1377 (1982). The record contains evidence supporting the Commission's decision which is both substantial and competent. We therefore affirm the Commission's denial of compensation.[1] Costs on appeal to respondents.

BAKES, C.J., concurs.

McDEVITT, J., concurs in the result.

JOHNSON, Justice, concurring specially.

I concur with the lead opinion, except the statement that had we been the fact finders we might have concluded differently. I would not have concluded differently.

BOYLE, Justice, concurring specially.

I concur in the opinion of the Court to the extent that the decision of the Industrial Commission is affirmed and join in the special concurrence of Justice Johnson.

---

1. Morgan has argued that Idaho Code § 72–208 does not permit the Commission to deny a claimant benefits because of the claimant's intoxication, but instead only permits the Commission to reduce the claimant's benefits by fifty percent. This argument misconstrues the structure of the workers' compensation statutes and the legislative intent behind § 72–208. Section 72–208 does not eliminate the requirement that the claimant must show that the accident arose "out of and in the course of" the claimant's employment. Rather, this section provides that if a claimant is otherwise eligible for benefits *and* the injury is the proximate result of the claimant's intoxication, the claimant's benefits shall be reduced by fifty percent. The section does not create any entitlement to compensation if the claimant is not otherwise eligible for that compensation under the rubric of the workers' compensation statutes.