879 P.2d 1089

Charlene **REINSTEIN, mother of Erin N. Zolber, and Danielle L. Zolber, minor children of Lawrence Zolber, deceased, Claimants–Appellants,**

v.

**McGREGOR LAND AND LIVESTOCK, CO., employer, and State Insurance Fund, surety, Defendants–Respondents.**

No. 19995.

Supreme Court of Idaho.
Lewiston, October Term 1993.

Aug. 17, 1994.

Aherin & Rice, P.A., Lewiston, for appellant. Anthony C. Anegon argued.

Randall, Blake & Cox, Lewiston, Wynne M. Blake and Jay P. Gaskill, argued for respondent.

McDEVITT, Chief Justice.

## I

## FACTS AND PROCEDURE

Erin and Danielle Zolber (Claimants) are the two minor daughters of Lawrence P. Zolber (Zolber), who died in an automobile accident on November 1, 1990. They claim worker's compensation death benefits through their mother and guardian, Charlene Reinstein, who divorced Zolber in 1981.

On November 1, 1990, Zolber was employed full-time as an operations manager at the Tammany plant of the McGregor Land and Livestock Company (McGregor), located in Lewiston. McGregor's business includes the commercial manufacture, sale, and application of agricultural fertilizers, herbicides and pesticides. As operations manager, Zolber was responsible for maintaining the machinery at the Tammany plant in running order and scheduling crews and machinery for jobs. Zolber's responsibilities also included operating McGregor's chemical spraying equipment on jobs contracted out of both the Tammany plant and McGregor's Prairie plant, which was located about fifty-five miles away, near the town of Nezperce. Zolber frequently traveled to the Prairie plant in order to process paper work related to spraying jobs contracted out of that plant. As part of his employment, Zolber was authorized to drive a four-wheel-drive truck belonging to McGregor.

On November 1, 1990, Zolber drove the company truck from the Tammany plant to the Prairie plant, arriving between 4:00 and 4:30 p.m. The manager of the Prairie plant was Richard Baker. Zolber and Baker had known each other for about ten years and were close friends. Upon arriving at the Prairie plant, Zolber spoke with Baker for a moment and then went in the office to meet with Cheryl Baker, Richard's wife, who was a secretary and bookkeeper at the plant. Zolber reviewed some paperwork with Cheryl Baker and discussed a billing problem pertaining to a spraying job which Zolber had performed for a customer of the Prairie plant. After discussing business for about ten minutes, Zolber and Cheryl Baker talked

about personal matters for another fifteen or twenty minutes. Zolber then returned to his truck, where he was met by Richard Baker. Zolber and Baker then drove in their separate vehicles to Rosi's, a bar in Nezperce, about six or seven miles from the Prairie plant.

Zolber and Baker were at Rosi's between about 5:15 and 6:00 p.m., during which time they consumed some mixed drinks. While Zolber and Baker were returning to their trucks they noticed the pick-up trucks of "customers and friends" at the Clover Club, another bar, and they decided to stop there. While at the Clover Club, Zolber and Baker sat with these customers and friends and had more drinks. At about 8:30 p.m., Zolber and Baker left the Clover Club. Although Baker testified that he did not believe either he or Zolber was too intoxicated to drive, Baker stated that he asked Zolber if he felt he could make the fifty-five mile drive to Lewiston safely. Zolber responded that he could, and Zolber and Baker both departed for their homes, each in his own vehicle.

The next morning Zolber was found dead in the company truck, about two miles outside of Nezperce, on a road leading back to Lewiston. The officer who investigated the accident determined that as Zolber's truck had descended a gentle slope ·in the road, it swerved across, off and back onto the road three times before finally going off the road into a ditch. The impact threw Zolber's body forward and then down onto the floor. The coroner who performed the subsequent autopsy determined that Zolber's neck · had been broken, causing his immediate death. The results of a blood alcohol test performed in conjunction with the autopsy indicated that Zolber had a blood alcohol level of .30 percent at the time of death. The investigating officer concluded that the accident which resulted in Zolber's death was caused by Zolber's intoxication.

A hearing was held before the Industrial Commission on October 15, 1991. Based on the evidence presented, the Commission determined that Zolber's trip to the Prairie plant from Lewiston was a business trip. However, the Commission determined that Zolber's detours to Rosi's and the Clover Club were personal activities which constituted such a deviation from his business purpose that the accident could not be considered to have arisen out of and in the course of his employment. Claimants appeal that ruling.

## II

## ANALYSIS

■ We note initially that, although the Worker's Compensation Act is to be construed liberally in favor of Claimants, *Hansen v. Estate of Harvey,* 119 Idaho 333, 338, 806 P.2d 426, 431 (1991), the burden is on Claimants to show by a preponderance that the accident arose out of and in the course of employment. *Basin Land Irr. Co. v. Hat Butte Canal Co.,* 114 Idaho 121, 124, 754 P.2d 434, 437 (1988).

■ Our task on appeal is to review whether the Industrial Commission properly applied the law to the facts of the case when it concluded that Zolber's fatal accident did not arise out of and in the course of his employment. Idaho Const. art. V, § 9; *Morgan v. Columbia Helicopters, Inc.,* 118 Idaho 347, 350, 796 P.2d 1020, 1023 (1990). To the extent that this appeal involves questions of fact, we defer to the factual findings of the Commission, so long as they are supported by substantial competent evidence. *Houser v. Southern Idaho Pipe & Steel, Inc.,* 103 Idaho 441, 443, 649 P.2d 1197, 1199 (1982). We review questions of law freely. *Combs v. Kelly Logging,* 115 Idaho 695, 697, 769 P.2d 572, 574 (1989); *Paullas v. Andersen Excavating,* 113 Idaho 156, 157–58, 742 P.2d 411, 412–13 (1987).

To determine whether Zolber's accident arose out of and in the course of his employment, the Commission necessarily had to determine the facts and circumstances of the case, and then apply the law of worker's compensation to those facts. *Beebe v. Horton,* 77 Idaho 388, 390, 293 P.2d 661, 662 (1956). Thus, the issue of whether Zolber's accident arose out of and in the course of his employment is a mixed question of law and fact. *Compare Logsdon v. Northern Iron & Metals Co.,* 101 Idaho 74, 76, 608 P.2d 877,

879 (1980) (Commission's decision whether injuries arose out of and in the course of employment was a conclusion of law flowing from its findings of fact) *with Koester v. State,* 124 Idaho 205, 208, 858 P.2d 744, 747 (1993) (whether injury arose out of and in the course of employment is question of fact where appellant challenged only factual findings underlying Commission's conclusion that injury did not occur within course of claimant's employment).

◼ The Commission concluded that Zolber's trip to the Prairie plant was employment related. This conclusion is supported by the law and the evidence. The record shows that Zolber went to the Prairie plant to process paper work and discuss a billing problem with the plant's bookkeeper. Zolber drove a company vehicle on this trip. Travel may constitute a business trip, although done in part to serve the personal purposes of the employee. So long as the court finds that the service of the employer was at least a concurrent cause of the trip, it need not be a paramount cause of the trip. *Parker v. Twin Falls County,* 62 Idaho 291, 296–97, 111 P.2d 865, 866–67 (1941); *In re Christie,* 59 Idaho 58, 75–77, 81 P.2d 65, 72–73 (1938). This "concurrent cause" rule, also known as the "dual purpose" rule, *Morgan,* 118 Idaho at 349, 796 P.2d at 1022, has been described as follows:

> The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk.

*Christie,* 59 Idaho at 75–76, 81 P.2d at 72 (citation omitted), *quoted in Parker,* 62 Idaho at 296, 111 P.2d at 866.

◼ The Commission concluded that, although Zolber's trip to the Prairie plant was a business trip, his subsequent detours to Rosi's and the Clover Club were such deviations from the business purpose of the trip that they broke the causal chain leading to the accident, so that the accident could not be said to have arisen out of or in the course of Zolber's employment. The Commission found that Zolber's departures to the bars were not business related, but purely personal. The Commission further concluded that Zolber's personal departures broke the causal chain such that his subsequent accident could not be said to have arisen in the course of his employment.

This Court previously addressed this issue in *Morgan v. Columbia Helicopters,* 118 Idaho 347, 796 P.2d 1020 (1990). Morgan was a project manager for a logging company whose duties included arranging for repairs of the company's logging equipment. One of the company's pickup trucks had sustained damage and Morgan decided to obtain the services of David Stricker, a mechanic who lived in Crouch, to repair the truck. Morgan left his home near Sweet at about 8:00 p.m. on a Saturday night, driving his company truck. Morgan drove toward Crouch, although he had not previously arranged a meeting with Stricker. On the way, Morgan stopped at a bar, where he had two drinks. He left the bar around 8:30 p.m. and arrived in Crouch at about 9:00 p.m. Morgan went to a bar in Crouch where he found Stricker, and the two men arranged for the repair of the pickup. Morgan remained at the bar with Stricker and a number of other acquaintances for about four more hours, during which time he had six to eight more drinks. When Morgan left the bar in Crouch at about 1:15 a.m., he drove back toward Sweet. On the way, Morgan stopped in Horseshoe Bend to see an acquaintance. However, the acquaintance was not home, and Morgan returned to the highway heading toward Sweet. While on the highway, Morgan's truck crossed the center line and struck an oncoming vehicle. The driver of the other vehicle was killed, and Morgan was injured. Morgan's blood/alcohol level was measured at .20 percent. The Industrial Commission denied Morgan's claim for benefits on the ground that his personal activities on the night of the accident were not reasonably related to his employment errand, and that those activities

constituted such personal deviations that the accident could not be considered to have arisen out of and in the course of Morgan's employment. This Court affirmed, stating that the issue to be determined in such cases is "whether the departure from the claimant's employment became so personal that it broke the causal connection to such an extent that the resulting accident could no longer be said to 'arise out of and in the course of' the claimant's employment." *Id.* at 349, 796 P.2d at 1022.

The basis for the Commission's holding in *Morgan* was the conclusion that "Morgan's personal activities on the night of the accident were not reasonably related to his employment errand and that those activities constituted such a 'deviation' that the accident could not be considered to have arisen 'out of and in the course of' Morgan's employment with Columbia Helicopters." 118 Idaho at 349–50, 796 P.2d at 1022–23. This Court held that the Commission correctly applied the law, stating substantial and competent evidence supported the Commission's conclusion that Morgan's personal deviations from his employment-related task were such that the accident could not be considered to have arisen out of and in the course of his employment. *Id.* at 350, 796 P.2d at 1023. Similarly, although Zolber was initially acting within the course and scope of his employment when he traveled to the Prairie plant, the Commission's conclusion that his subsequent departures from that employment-related errand severed the relationship between his personal activities and his employment-related errand is supported by substantial and competent evidence.

### III

### CONCLUSION

The Commission's order denying death benefits to the Claimants is affirmed. Costs on appeal are awarded to respondents.

BISTLINE and JOHNSON, JJ., and MICHAUD, J. Pro Tem, concur.

SILAK, Justice, dissenting.

I respectfully dissent. Zolber's accident did not occur during his personal departure, but after he had resumed the return portion of his business trip. "Generally, compensation is not allowed to workers for injuries occurring on the way to or from work, based on the perception that such injuries are not sufficiently causally linked to employment." *Pitkin v. Western Constr.*, 112 Idaho 506, 507, 733 P.2d 727, 728 (1987). An exception to this "going and coming" rule is what has become known as the "traveling employee" doctrine. In explaining the traveling employee rule in *Ridgway v. Combined Ins. Cos. of Am.*, 98 Idaho 410, 565 P.2d 1367 (1977), the Court stated:

> The appropriate rule to be applied to determine the scope of workmen's compensation coverage for employees whose work entails travel away from the employer's premises at which the employee normally works is set forth in 1 LARSON, WORKMEN'S COMPENSATION LAW, § 25.00, p. 443:
>
> > "Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown."

*Ridgway*, 98 Idaho at 411–12, 565 P.2d at 1368–69; *see also Kirkpatrick v. Transtector Sys.*, 114 Idaho 559, 562, 759 P.2d 65, 68 (1988). In *Ridgway*, the Court explained that a traveling employee's injuries are not compensable where the employee is injured while engaged in a distinctly personal departure unrelated to the employment, such as "an employee who is injured while engaged in a non-business related activity such as skiing or who drowns while scuba diving during a break in a business trip." *Ridgway*, 98 Idaho at 412, 565 P.2d at 1369.

These examples and the Court's language clearly show that while a traveling employee's injuries are not compensable when they occur during a purely personal departure from the business trip, a personal departure takes an employee out of the course of his or her employment only until the employee returns to the course of business. Once the

employee resumes the route or activities of the business trip, the employee is again within the course of his or her employment. *Id.* at 412, 565 P.2d at 1369 (traveling employee is within the course of employment continuously during business trip, except during period of purely personal departure); *Kirkpatrick,* 114 Idaho at 562, 759 P.2d at 68; LARSON, § 19.00 (deviation from business trip for personal reasons takes employee out of course of employment only until return to route of business trip). This rule is logical, for any business trip that begins from a particular place, such as the employee's home or office, must necessarily contemplate both an outgoing and a returning trip. *See* 1 LARSON § 19.29(a) at 4–370. "[T]he return trip from a dual-purpose journey, at any point where it constitutes a return from places that had to be reached for business reasons, is within the course of employment." 1 LARSON § 19.29(a) at 4–368.

The nature of Zolber's purpose in going to the bars with Baker was vigorously disputed by the parties. Claimants pointed to evidence that Zolber, who grew up in the Nezperce community and knew many of the area's farmers, accompanied Baker to the bars at least with the concurrent purpose of furthering McGregor's business interests by helping Baker develop business relationships with current and prospective clients. McGregor points to evidence that Zolber's business-related activities at the bars, if any, were insignificant and merely incidental to his personal purposes. The Commission determined that Zolber's departures to the bars were not business related, but purely personal. The Commission further concluded that Zolber's personal departures broke the causal chain such that his subsequent accident could not be said to have arisen in the course of his employment. In reaching this conclusion, the Commission and the majority misapplied the traveling employee doctrine, as set forth above.

As a traveling employee, Zolber was within the course of his employment continuously during the trip, except during any distinctly personal departures. It is immaterial whether Zolber's activities at Rosi's and the Clover Club are characterized as "dual purpose" or purely personal departures from his business trip, because it is undisputed that Zolber's fatal accident did not occur until after he had left the bars and had begun his return trip to Lewiston. Zolber's return to Lewiston was obviously a contemplated and necessary part of his business trip. Based on the undisputed facts, Zolber's fatal accident did not occur during any personal departure, but during the return portion of his business trip, and therefore the accident arose out of and within the course of his employment as a matter of law.

The majority incorrectly holds that this case is indistinguishable from *Morgan v. Columbia Helicopters,* 118 Idaho 347, 796 P.2d 1020 (1990), in which this Court affirmed the Commission's denial of compensation benefits. I view the facts in *Morgan* as distinguishable from this case, because in *Morgan* this Court never stated that Morgan was in fact traveling home; Morgan's pattern of stopping here and there along his route of travel is in marked contrast to this case, where it is undisputed that Zolber had completed any personal departures from his business errand and resumed the course of his business trip at the time the accident occurred.

The Commission found that Zolber's intoxication was the proximate cause of his fatal accident. I.C. § 72–208(2) provides as follows:

> If an injury is the proximate result of an employee's intoxication, all income benefits shall be reduced by fifty per cent (50%), provided that such reduction shall not apply where the intoxicants causing the employee's intoxication were furnished by the employer or where the employer permits the employee to remain at work with knowledge by the employer or his supervising agent that the employee is intoxicated.

Although there is substantial competent evidence to support the Commission's finding that Zolber's injuries were the proximate result of his intoxication, I would remand the case to determine whether either of the exceptions mentioned in I.C. § 72–208(2) applies to prevent the statute's application. Should the Commission then determine fur-

ther that neither of the exceptions applies to prevent the statute's application, the Commission should reduce the claimants' award of benefits by fifty percent.