939 P.2d 1384

**Gloria MONDRAGON, surviving spouse of Trinidad Mondragon, decedent, individually and as the guardian of and on behalf of: D'Nelia Susana Mondragon, Anthony David Mondragon, Angel James Mondragon, Adrian Trinidad Mondragon, and Andrew Joshua Mondragon, minors, Claimants–Appellants,**

v.

**A & L REFORESTATION, INC., employer, and State Insurance Fund, surety, Defendants–Respondents.**

No. 22169.

Supreme Court of Idaho,
Boise, March 1996 Term.

July 8, 1997.

**306**

Richard S. Owen, Nampa, for claimants–appellants.

Evans, Keane, Koontz, Boyd, Simko & Ripley, Boise, for defendants–respondents.

JOHNSON, Justice.

This is a workers' compensation case. We conclude: (1) there is substantial and competent evidence to support the finding of the Industrial Commission (the Commission) that the employee's death did not arise out of the course and scope of his employment, (2) the Commission correctly applied the dual purpose doctrine, and (3) the Commission was correct in refusing to apply the remote work site doctrine.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS

A & L Reforestation, Inc. (the employer), a Boise business, plants trees under contract with the U.S. Forest Service. In May 1993, Trinidad Mondragon (the employee), a fourteen-year employee of the employer, was the lead foreman at a tree planting site a few miles up the South Fork of the Payette River from Lowman. The employee resided at the camp site (the camp site) in a trailer and had a company vehicle at his disposal. As lead foreman, the employee was responsible for maintaining the equipment and providing the basic necessities for the crew. The employee's supervisor (the supervisor), who was also vice-president of the employer, testified that the employee would take the crew members to the South Fork Lodge (the lodge) in Low-man to buy groceries and get gas for their vehicles.

In mid-May 1993, the employee and his crew were preparing to leave for another job in southern Utah. In anticipation of this move, the supervisor asked the employee to meet him at the lodge sometime between 8:30 and 11:00 p.m. to discuss the upcoming trip. The meeting time was left indefinite because the supervisor was going to be returning from Boise with some equipment. The supervisor testified that he expected the employee to wait at the lodge until 2:00 a.m., if necessary.

At approximately 8:00 p.m. on May 16, 1993, the employee and two of his crew members (the two crew members) arrived at the lodge in a car (the car) belonging to one of the two crew members. The employee ordered and paid for one beer each for himself and the two crew members. Shortly after arriving, the employee and the two crew members became involved in an argument with three men from Boise. The bartender immediately ordered the three men from Boise out of the bar, and they left without further incident.

After the three men from Boise left, the bar manager came into the bar and began talking with the employee. At this point, the evening's events become somewhat contested. According to the bartender, the bar manager was angry because the bartender had ejected the three men from Boise. The bar manager told the employee he could not drink anymore at the lodge. The bartender testified that the employee kept talking with the bar manager in an attempt to persuade the bar manager to allow the employee and the two crew members to have another beer. The employee also bought two or three rounds for the house totaling approximately fifty dollars, apparently in an unsuccessful attempt to regain drinking privileges for himself and the two crew members. In his testimony, the bar manager rejected the characterization of his exchange with the employee as a disagreement, stating that he was trying to stop the employee from buying drinks for the house because he did not want the employee spending money on some "prejudiced people" in the bar. The Commission

found that the bar manager's testimony lacked credibility, noting that his story had changed over time.

At approximately 9:00 p.m. on May 16, 1993, the employee and his crew members left the lodge without buying more beer. The bartender testified that the employee finished drinking his beer, while the two crew members left their glasses full. Another witness testified that neither the employee nor the two crew members drank their beer. There is also conflicting testimony concerning the employee's attitude when he left the bar and his statements concerning when he would return to the lodge. Although the bartender thought the employee was upset about not being served, the bar manager testified that the employee was in a good mood. According to the bartender, the employee's words on leaving were, "I'll leave and I'll be coming back." Another witness testified that the employee's parting words were that he would see them tomorrow.

The employee and the two crew members left in the car, with the employee in the passenger seat. Approximately half an hour later, a man came into the lodge stating that he thought a car had gone off the road into the river. Law enforcement officers and a search party found skid marks and other evidence of an accident approximately two miles up the river from Lowman, in the direction of the camp site and two other businesses which sold beer. The law enforcement officers estimated from the skid marks that the car had been traveling approximately eighty miles an hour, which was thirty-five miles per hour over the speed limit, when it went off the road.

Searchers recovered the body of one of the two crew members on June 5, 1993, fifty miles down the Payette River. The next day the car was found and retrieved, with the body of the second of the two crew members inside. The employee's body has never been recovered.

The employee's widow, on behalf of herself and the employee's five minor children (the claimants), filed a workers' compensation claim for the employee's death. At the original hearing, the issues were limited to whether the employee was deceased and whether the accident occurred within the course and scope of his employment. The referee found that the employee died in the accident, but that the accident was not within the course and scope of his employment. The referee concluded that when the accident occurred the employee and the two crew members were on their way to purchase alcohol, a personal errand which constituted a significant departure from his initial business purpose for going to the lodge. By a two to one vote, the Commission adopted the referee's findings and conclusions. The claimants appealed.

While this Court had the appeal under advisement, the claimants filed a motion for suspension of the appeal and for a temporary remand to allow the Commission to consider granting claimants the opportunity to reopen the case to present newly discovered evidence in the form of testimony by a helicopter mechanic (the mechanic) who was in the area on the night of the accident. We granted this motion, suspending the appeal during the remand, with reinstatement of the appeal to occur following the filing of an order from the Commission.

The Commission granted the motion to reopen the case to consider the testimony of the mechanic concerning whether the employee's death was caused by an injury arising out of and in the course of his employment. At the reopened hearing the mechanic testified that on May 16, 1993, he was in the bar at the lodge and saw the employee and the two crew members when they arrived. The mechanic stated that the entire time the employee and the two crew members were in the bar, it was quiet and no one raised their voice. He testified that he left the bar shortly after the employee and the two crew members left and saw them get in the car. He said he saw them drive toward the front of the lodge where some gasoline pumps were located. He stated the he saw the employee and the two crew members standing next to the car by the pumps with seven or eight individuals he believed to be other employees of the employer. These other individuals had two pickup trucks and a van. The mechanic testified that he spoke very briefly with the

employee and that the employee exhibited a normal demeanor and did not seem to be angry. The mechanic also testified that as he walked toward his truck, with his back to those by the gasoline pumps, someone said something about going home or back to camp. The mechanic testified he had no idea who made the statement or where the employee intended to go next.

The mechanic testified that he then proceeded north of the lodge on Highway 21, passing the car as it was parked near a pay telephone. The mechanic testified that three men were standing with their backs to him and that one of the men was using the phone. He testified that he proceeded a short distance and then pulled to the side of the highway and left the truck to inspect a helicopter on a nearby helipad. He said the car drove by at a speed he estimated to be thirty-five miles per hour and that the employee waved at him from the front passenger seat. The mechanic testified that the car accelerated to approximately forty-five miles an hour, which was the speed limit, and disappeared around a curve in the highway. He testified that he then drove his truck in the same direction, arriving at the scene of an accident approximately one mile further north on Highway 21. He testified that he saw some debris and tire skid marks running to the left side of the highway and then back to the right side and shoulder of the highway. He said that shortly after he came upon this scene, the other three vehicles in which the employer's other employees were traveling arrived, and he returned to the lodge and asked the bartender to call the sheriff.

One of the employer's attorneys and his legal assistant testified at the reopened hearing concerning interviews they had conducted with the mechanic. Their testimony disputed some of the mechanic's testimony, especially concerning whether the employee and his crew members were involved in some sort of disturbance in the bar at the lodge on the evening of the accident, whether the employee and the two crew members were restricted from purchasing and consuming any more alcoholic beverages in the bar, and whether the employee became upset or angry and left the bar.

Following the reopened hearing, the referee reaffirmed his original finding that the employee was highly motivated to consume more alcohol after leaving the bar at the lodge and that it is more likely than not that he embarked on a personal errand to pursue this objective. The referee concluded that the claimants failed to carry their burden of proof and did not establish that the employee's death was caused by an accident arising out of and in the course of his employment. In a two to one decision, the Commission adopted the referee's findings of fact and conclusions of law and denied the claimants any benefits.

Upon receiving a copy of the Commission's new order, we reactivated the appeal.

## II.

### THERE IS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S FINDING THAT THE EMPLOYEE'S DEATH DID NOT ARISE OUT OF THE COURSE AND SCOPE OF HIS EMPLOYMENT.

■ The claimants assert that there is not substantial and competent evidence to support the Commission's finding that the employee's death did not arise out of the course and scope of his employment. We disagree.

The Commission stated in the original decision that it is likely that the employee's trip to the lodge was covered under the workers' compensation law under one or more of the following rules: (1) the special errand rule, as an exception to the going and coming rule; (2) the dual purpose rule; and (3) the traveling employee rule. The question the Commission then addressed is whether the employee departed from the business purpose he had in going to the lodge on the evening of the accident to such an extent that it broke the causal chain leading to the accident, so that the accident could not be said to have arisen out of the course and scope of his employment. *Reinstein v. McGregor Land & Livestock Co.*, 126 Idaho 156, 159, 879 P.2d 1089, 1092 (1994).

There is no direct evidence concerning where the employee and the two crew members were going when the accident occurred. This left the Commission with the task of assessing the available circumstantial evidence. The Commission had the following evidence bearing on their decision: (1) the employee was unsuccessfully trying to buy additional beer at the lodge; and (2) when the accident occurred, the car was headed towards both the camp site as well as two establishments where alcohol could be purchased. This is substantial and competent, although not compelling, evidence to support the Commission's finding that the employee and his crew members were on their way to purchase alcohol.

### III.

### THE COMMISSION CORRECTLY APPLIED THE DUAL PURPOSE DOCTRINE.

The claimants assert that the Commission incorrectly applied the dual purpose doctrine. We disagree.

■ The claimants contend that even if the employee and the two crew members intended to purchase alcohol after leaving the lodge, the employee also had a business responsibility, or dual purpose, to return the two crew members safely to the camp site. The claimants cite *Van Vranken v. Fence–Craft,* 91 Idaho 742, 749, 430 P.2d 488, 495 (1967), in which the Court noted that "the better reasoned authorities dealing with deviations by an employee from the geodesic route have generally recognized that a proportionately slight or expectable deviation will not relieve an employer of vicarious liability."

■ We conclude that the Commission correctly applied the dual purpose doctrine in the present case. Although a slight or expectable deviation from a business route or purpose is permissible under the dual purpose doctrine, if subsequent detours "were such deviations from the business purpose of the trip that they broke the causal chain leading to the accident ... the accident could not be said to have arisen out of or in the course of [the worker's] employment." *Rein-*

*stein,* 126 Idaho at 159, 879 P.2d at 1092 (upholding the Commission's decision that there was a sufficient deviation from the employee's business purpose to render the dual purpose doctrine inapplicable). In applying the dual purpose doctrine in the present case, the Commission correctly followed the reasoning of *Reinstein,* concluding that there was a substantial deviation from the employee's business purpose.

### IV.

### THE COMMISSION WAS CORRECT IN NOT APPLYING THE REMOTE WORK SITE DOCTRINE.

■ The claimants assert that the Commission should have applied the remote work site doctrine to this case. We disagree.

Some jurisdictions apply the remote work site doctrine in compensating workers living at remote work sites who are injured while engaging in recreational activities. The doctrine apparently originated with a U.S. Supreme Court decision in a case where a contractor in Guam provided its employees with free bus transportation to a nearby beach and recreation area on the weekends. *O'Leary v. Brown–Pacific–Maxon, Inc.,* 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951). In upholding compensation for an employee who died trying to rescue a drowning swimmer, the Supreme Court did not even question whether the weekend excursion was within the course and scope of employment. The policy rationale of the remote work site doctrine is that when job conditions limit the non-employment activities of workers at a remote work site, the employer's reasonable expectations include those few recreational activities available. The claimants contend that social drinking in Lowman should be covered under this reasoning.

This Court has never addressed the remote work site doctrine, and the Commission rejected its application here. As the Commission noted, the following factors are among those found and considered in cases applying the remote work site doctrine: (1) the remoteness and isolation of the work site, including whether it was in a foreign country;

(2) the special nature and hazards of the isolated environment; (3) whether the injury occurred on the employer's property; (4) the benefit to the employer and employee of the recreation; and (5) whether the recreational activities were inducements to employment.

Considering these factors, the Commission concluded that the work site in the present case was not sufficiently remote or isolated, being relatively near Stanley, Idaho City, and Boise, and that the availability of social drinking in Lowman, which is ten miles from the camp site, did not appear to be an incentive for employment with the employer. The Commission concluded that with regard to the recreational activity of social drinking, the circumstances of the employee's employment were not any different or more hazardous than any other employment. Without indicating whether or not we embrace the concept of the remote work site doctrine, we agree with the Commission that the evidence in the present case does not present the factual circumstances for the application of the remote work site doctrine.

## V.

## CONCLUSION

We affirm the Commission's denial of benefits to the claimants.

We award the employer its costs on appeal.

TROUT, C.J., and McDEVITT, SILAK and SCHROEDER, JJ., concur.