837 P.2d 781

**Agnes L. TRAPP, Claimant–Appellant,**

v.

**SAGLE VOLUNTEER FIRE DEPART-MENT, Employer, and State Insurance Fund, Surety, Defendants–Respondents.**

**No. 19305.**

Supreme Court of Idaho,
Boise Term, March 1992.

July 1, 1992.

Rehearing Denied Sept. 11, 1992.

Dissenting Opinion of Justice Bistline
on Denial of Rehearing
Sept. 11, 1992.

Thomas A. Mitchell, Coeur d'Alene, for appellant.

Ellis, Brown & Sheils, Boise, for respondent. Max M. Sheils, Jr., argued, Boise.

BAKES, Chief Judge.

Claimant Agnes L. Trapp appeals from an order of the Industrial Commission denying her claim for attorney fees against the State Insurance Fund. Trapp claims attorney fees under I.C. § 72–804, arguing that the State Insurance Fund contested her claim for compensation "without reasonable ground." The Industrial Commission denied her claim for attorney fees, finding that the State Insurance Fund did not defend the case unreasonably. We affirm.

The claimant was a volunteer member of the Sagle Fire Department who had been solicited by the fire department to take an Emergency Medical Technician (EMT) course in order to qualify the Quick Response Unit (QRU) for emergency medical treatment. On January 4, 1990, the claimant was injured in an automobile accident while she and five other occupants of the car were traveling to the EMT course, in which all of the occupants were enrolled. After the accident, the claimant filed a claim for worker's compensation benefits, which the employer and surety defended on the ground that her travel at the time of the accident was within the "going-and-coming" rule exception to compensability.

After a hearing, the Industrial Commission concluded that the "special errand" exception to the going-and-coming rule applied and therefore the claimant was within the course and scope of her employment at the time of the accident.[1] The Commission summarized the relevant law as follows:

---

**1.** As the Commission explained in its order, "[I]t is generally held that employers are not liable for accidents their employees suffer while commuting to and from work. This 'going-and-coming rule' exception to compensability has itself spawned exceptions and exceptions to exceptions, one being the special errand rule. Where an employee, although not at her regular place of business, even before or after custom- ary work hours is doing some special service or errand or the discharge of some duty of or under the direction of her employer, an injury arising en route to or from the place of performance of the work is considered arising out of and in the course of employment. *Dameron v. Yellowstone Trail Garage,* 54 Idaho 646, 34 P.2d 417 (1934)."

[W]e deal not so much in mechanical rules but with a series of factors of reasonableness that the Commission must weigh in light of its own expertise. The accident may not occur at the work site, but must be in a place where the worker may reasonably be; it may not occur during scheduled work hours, but must be at a reasonable time; it may not occur while engaged in worker's precise job description, but it must pertain to some act reasonably incidental to the employee's work; it may not occur while performing work actually ordered by the employer, but must be activity in which the employer has acquiesced. [Citation omitted.] It must not be so personal that it cannot be said to have arisen out of and in the course of employment.

After pointing out that this analysis required a weighing of the evidence in light of the several factors involved, the Commission identified five factors which the appellant had asserted were necessary to evaluate the case.[2] The Commission then weighed the evidence in relation to each of the five factors in turn and ultimately concluded that, on balance, the claimant's accident and injuries arose out of and in the course of her employment with Sagle Volunteer Fire Department. Neither side appealed the Industrial Commission's decision.

After receiving the Commission's decision, the claimant filed a motion requesting attorney fees under I.C. § 72–804,[3] on the ground that the employer and its surety had defended her claim for worker's compensation unreasonably. The Industrial Commission referred the matter to a referee, who concluded that "the conduct of the surety in this case was not unreasonable." The Commission adopted the referee's recommendation. On petition for reconsideration, the Commission stated that, "The test which was ultimately adopted in the Findings of Fact, Conclusions of Law, and Order in this matter was a test which involves applying a series of factors to particular facts, which necessarily vary with each case." After noting that it was "the Claimant who first directed the Commission's attention to this authority from the State of Arizona [*Johnson Stewart Mining, Co., Inc. v. Industrial Commission*, 133 Ariz. 424, 652 P.2d 163 (1982) *supra* ], which was subsequently relied on to reach the decision favorable to the Claimant in the underlying matter," the Commission concluded that the surety's argument as to the state of the law and the application of the evidence to the five factors articulated in the Commission's earlier opinion was not unreasonable.

This Court held in *Quintero v. Pillsbury Co.*, 119 Idaho 918, 811 P.2d 843 (1991), that:

> The decision to award fees pursuant to [72–804] rests with the Industrial Commission. Other than in clear cases we defer to the judgment of the Industrial Commission. [Citation omitted.] The Commission is well experienced in determining what circumstances warrant the imposition of attorney fees.

119 Idaho at 921, 811 P.2d at 846. In *Troutner v. Traffic Control Co.*, 97 Idaho 525, 547 P.2d 1130 (1976), we held that:

> The decision that grounds exist for awarding a claimant attorney fees is a factual determination which rests with the Industrial Commission. [Citations omitted.] The conclusion of the Industrial Commission that no grounds existed for allowing attorney fees in this case is

**2.** Those five factors were derived from an Arizona Supreme Court case, *Johnson Stewart Mining Co., Inc. v. Industrial Commission,* 133 Ariz. 424, 652 P.2d 163, 166 (1982), and are: "(1) Did the activity inure to the substantial benefit of the employer? (2) Was the activity engaged in with the permission or at the discretion of the employer? (3) Did the employer knowingly furnish the instrumentalities by which the activity was to be carried out? (4) Could the employee reasonably expect compensation or reimbursement for the activity engaged in? (5) Was the activity primarily for the personal enjoyment of the employee?"

**3.** I.C. § 72–804 reads in part: "If the commission ... determines that the employer or his surety contested a claim for compensation made by an injured employee ... without reasonable ground, ... the employer shall pay reasonable attorney fees in addition to the compensation provided by this law. ...."

supported by substantial evidence and will not be set aside on appeal. 97 Idaho at 528, 547 P.2d at 1133.

In this case, the Industrial Commission concluded that Idaho case law relating to the "special errand" exception to the going-and-coming rule was not definitive and that the rule proposed by the claimant from the Arizona case of *Johnson Stewart Mining Co., Inc. v. Industrial Comm'n, supra,* provided the appropriate test. That test required the Industrial Commission to weigh the evidence regarding each of five factors, not all of which were favorable to the claimant in this case, in order to decide whether the claimant was within the course and scope of her employment. After that weighing and balancing, the Commission concluded that the factual and legal issues raised by the surety were not unreasonable and therefore denied the claimant's motion for attorney fees.

The Commission "is well experienced in determining what circumstances warrant the imposition of attorney fees," and its determination, which required the weighing of the evidence and the balancing of factors, is supported by the record. *Quintero v. Pillsbury Co., supra,* and *Troutner v. Traffic Control Co., supra.* Accordingly, we find no abuse of discretion and affirm the Commission's decision.[4]

Costs to respondent. No attorney fees allowed.

JOHNSON and McDEVITT, JJ., and SCHILLING, J. Pro Tem., concur.

BISTLINE, Justice, dissenting.

## I. THE DIE WAS CAST

The die was cast ordaining the proper disposition of Agnes Trapp's claims in a prior workers' compensation case, *Ridgway v. Combined Ins. Cos. of America,* 98 Idaho 410, 565 P.2d 1367 (1977).[5] Chief Justice Bakes authored that opinion, and it has since remained unscathed as leading Idaho case law precedent. It is applicable and conclusive as to the compensation claim of Agnes Trapp, namely, her entitlement to compensation. It follows as does day follow night, that I.C. § 72–804 entitles her to an award of attorney fees because of the surety's unreasonable and unjustified denial of compensation payments. I.C. § 72–804. Today's majority opinion, for whatever reason, is determined to uphold the Commission's outrageous conclusion that the surety acted "reasonably."

Justice Bakes, in six paragraphs of his *Ridgway* opinion, stated all that was necessary for a proper determination reversing the Industrial Commission's untoward decision denying compensation:

> The claimant appellant Roger Ridgway was injured while he was in Salt Lake City attending a two week training session operated by the defendant respondent Combined Insurance Companies of America. He applied for workmen's compensation benefits, but the Industrial Commission denied his claim on the ground that his injury had not arisen out of or during the course of employment with Combined. Because the conclusion of law upon which this order was based was in error and because the decision of the commission did not contain independent grounds for denying the claim, we reverse and remand for further proceedings.

> In October of 1974 Ridgway answered a newspaper advertisement in which

---

**4.** Our finding of no abuse of discretion in the Industrial Commission's determination that the surety did not unreasonably defend the claim is not inconsistent with, nor does it impliedly modify, this Court's holding in *Ridgway v. Combined Ins. Cos. of America,* 98 Idaho 410, 565 P.2d 1367 (1977), relied upon in the dissenting opinion of Justice Bistline.

**5.** Unbelievable, but true, neither the Commission nor its two referees in the strikingly similar Agnes Trapp compensation controversy showed any awareness of there being a *Ridgway* opin-

ion, notwithstanding that it was cited and relied upon in the trial briefs of both claimant and defendant. The defendant surety mentioned *Ridgway* in its attempt to mislead the Commission, all of which is documented and appears *infra.* All of this creates genuine concern that the system may be greatly overburdened and inadequately staffed to accommodate the burgeoning Idaho population and the corresponding increase in accidental injuries and resultant claims.

Combined sought trainees to become insurance salesmen. Ridgway signed a trainee agreement with Robert Ward, Combined's sale manager for an eight-county region in southwestern Idaho. Under that agreement Ridgway was to attend a two week training seminar which Combined operated in Salt Lake City. Ward and Combined provided for Ridgway's transportation to Salt Lake City, motel accommodations, travel between the motel and the training sessions, and a $6.00 per diem for meals.

The training program began on Monday, November 4, 1974. Classroom sessions were scheduled for every day during the following two weeks except Sunday, November 10. On that Sunday, Ridgway and three other trainees were at the motel studying in preparation for the second week of the training session. Shortly before noon, Ridgway and Ronald Sparks, another trainee, left the motel to purchase hamburgers for the group. They traveled in Sparks' car. While en route to a restaurant Sparks' car was struck by a train and Ridgway was injured. It is his claim that these injuries were compensable under the Workmen's Compensation Law.

Combined contested the workmen's compensation claim, arguing among other things, that Ridgway was an independent contractor and not Combined's employee. The Industrial Commission did not reach this issue. It concluded that even if Ridgway were Combined's employee, nevertheless,

'the Commission finds that the claimant was performing no service for the defendant at the time of the accident but was on a purely personal errand. *There was no special or peculiar risk to the claimant at that time caused by his alleged employment.* The only possible connection between the accident and the alleged employment was the fact that but for his relationship with the defendant, the claimant would not have been in Salt Lake City. The commission concludes that this extremely tenuous connection does not establish sufficient causal relationship between employment and the accident on which to base a conclusion that the accident arose out of an in the course of employment with the defendant.' Sec. Tr., p. 53 (Emphasis added).

Because, as we shall explain below, *the Commission has erroneously applied the special or peculiar risk doctrine* to this claim, the matter is remanded to the Industrial Commission for further proceedings.

This Court recently considered the peculiar risk doctrine in the case of *Clark v. Daniel Morine Const. Co.*, 98 Idaho 114, 559 P.2d 293 (1977). As we noted in that case, normally an employee traveling to and from work is not within the course of his employment and is not covered by workmen's compensation. However, *there is a recognized exception to this rule where travel to and from work involves a 'special exposure to a hazard or risk peculiarly associated with the employment' which is the cause of the injury.* In such cases, the injury is within the scope of coverage of the workmen's compensation law. 98 Idaho at 115, 559 P.2d at 293. As can be seen from *Clark* and the cases cited in that opinion, the *peculiar or special risk doctrine only deals with an employee going to and from his work situs*, usually the employer's place of business.

*The appropriate rule to be applied* to determine the scope of workmen's compensation coverage for employees whose work entails travel away from the employer's premises at which the employee normally works *is set forth in 1 Larsen, Workmen's Compensation Law, § 25.-00, p. 443:*

'Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, *injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.'*

When an employee's work requires him to travel away from the employer's place of business or his normal place of work, *the employee is covered by workmen's compensation while he attends to matters such as eating or securing lodging.* It is necessary for traveling employees to attend to these personal needs in order to carry out the employer's work, often at a location unfamiliar to the employee. Thus, keeping in mind the liberal construction that is to be given to the workmen's compensation laws, *Colson v. Steele,* 73 Idaho 348, 354, 252 P.2d 1049 (1953), the risk incident in going to a restaurant or seeking lodging should normally be covered by the Workmen's Compensation Law.

*Ridgway,* 98 Idaho at 411–12, 565 P.2d at 1368–69 (emphasis added). Because that case law precedent remains unchallenged and intact fifteen years later, it still stands for the same proposition which was then announced; not only is it here controlling as stated above, but the message sent out by *Ridgway* clearly informed sureties doing business in Idaho that any subsequent controversy, sounding on an identical or similar factual basis, would be similarly decided as *Ridgway.*

Fifteen years later, as though there were no *Ridgway,* State Insurance Fund, the surety for Sagle Volunteer Fire Department, denied Agnes Trapp's similar claim notwithstanding that following *Ridgway* this Court had not given any surety reason to believe that this Court would retreat from that unanimous holding. Nor has it ever done so—until today.[6] Such being the existing state of affairs, it ill-behooved State Insurance Fund, the surety, to deny the legitimate claim of the injured Agnes Trapp, thus putting her to the expense of retaining counsel, in order to prove a point of law which had previously been ingrained into Idaho law by the *Ridgway* decision.

Compounding the surety's careless or nefarious conduct in its treatment of Agnes Trapp, that *it was aware of Ridgway is indelibly documented* by its brief submitted to the Commission:

> Claimants' attendance at the EMT course was not required for completion of their duties as volunteer firemen and so they should not be considered to be traveling employees. The expansive language used by the claimants to include workers attending school within the traveling employee rule is found only within a concurring opinion in which only one other justice joined the writer. *Ridgeway* [sic] *v. Combined Ins. Companies of America,* 98 Idaho 410, 565 P.2d 1367 (1977).

R. 44–45. That statement did recognize *Ridgway,* but in and of itself was a base canard which every member of this Court should have challenged and castigated, because of its intended deception. Instead, that statement has been allowed to stand and it has served to swerve the Commissioners away from knowing that *Trapp* is totally identical to *Ridgway.* The formats of the two are indistinguishable.

The *Ridgway* plurality opinion of Justices Donaldson and Bistline was issued only to supply some amplification of Justice Bakes' lead opinion. On receiving and presumably reading the plurality opinion, Justice Bakes saw no need to alter his opinion one iota because of the content of the dissent. Had the surety used ordinary care in reading the *Ridgway* opinions, it would have readily observed that Justice Bakes stated in conclusion:

> Because it is necessary for any traveling employee to maintain himself while traveling, an employee should ordinarily be covered while traveling to and from restaurants, unless the particular trip represents an unreasonable departure in order

---

**6.** Idaho decisions relying on *Ridgway* include *Morgan v. Columbia Helicopters, Inc.,* 118 Idaho 347, 349, 796 P.2d 1020, 1022 (1990); *Kirkpatrick v. Transtector Sys.,* 114 Idaho 559, 562, 759 P.2d 65, 68 (1988); *In re Barker,* 110 Idaho 871, 872, 719 P.2d 1131, 1132 (1986); *Wise v. Arnold Transfer & Storage Co.,* 109 Idaho 20, 24, 704 P.2d 352, 356 (1985); *Ross v. Fiest,* 105 Idaho 119, 120, 666 P.2d 646, 647 (1983); and *In re Barker,* 105 Idaho 108, 109, 666 P.2d 635, 636 (1983). The Florida court of appeals, first division, cited *Ridgway* as authoritative in two of its decisions: *Eastern Airlines v. Rigdon,* 543 So.2d 822 (Fla.1989), and *Jean Barnes Collections v. Elston,* 413 So.2d 797 (Fla.1982).

to pursue some purely personal activity not connected with his employment or necessary to maintain himself while traveling.

*Ridgway,* 98 Idaho at 412, 565 P.2d at 1369.

The surety, in misstating *Ridgway* as it did in the brief it filed with the Commission, went far, far beyond the bounds of literary license in portraying the scenario in *Ridgway* as not within the long recognized exception to the traveling employee general rule. The surety went so far as to *blatantly assert that her attendance at the EMT course was not required* for completion of her duties as a fireman and she should not be considered as a travelling employee. R. at 44; Surety's Brief at 15.[7]

7. The stipulation of facts which was executed by the claimant and by the surety and which was presented to the Commission, filed, and of permanent record, includes a statement which throws the lie back into the mouth of the speaker:

> On November 14, 1989, claimant had completed an application for employment with Sagle Volunteer Fire Department. At the same time, she *signed with her employer a Statement of Intent, which was a prerequisite to enrollment in an emergency Medical Technician (EMT) course scheduled to be held over a period of some months in Spirit Lake, Idaho.* The first class was scheduled for November 16, 1989.

R. at 19. In order that there be no doubt, the Stipulation of Facts and Statement of Intent are attached hereto as Appendix A.

8. Idaho Code § 72–804 provides:

> **72–804. Attorney's fees—Punitive costs in certain cases.**—If the commission or any court before whom any proceedings are brought under this law determines that the employer or his surety contested a claim for compensation made by an injured employee or dependent of a deceased employee without reasonable ground, or that an employer or his surety neglected or refused within a reasonable time after receipt of a written claim for compensation to pay to the injured employee or his dependents the compensation provided by law, or without reasonable grounds discontinued payment of compensation as provided by law justly due and owing to the employee or his dependents, the employer shall pay reasonable attorney fees in addition to the *compensation* provided by this law. In all such cases the fees of attorneys employed by injured employees or their dependents shall be fixed by the commission.

The Chief Justice, in authoring today's opinion for the Court, does provide a fair presentation of those circumstances which he addresses attendant to this controversy. As he points out, the only issue yet in need of resolution is whether the Commission had any valid basis for its denial of the claim of Agnes Trapp for the attorney fees *which she incurred in pursuit of her industrial accident claim.* She asserts that the surety acted unreasonably and thus became liable for such payment per application of I.C. § 72–804,[8] the essence of which is aimed at obtaining prompt payment of workers' compensation claims; the statute provides the impetus of assessing attorney fees against the employer and/or surety who contest a claim without reasonable grounds.[9]

9. Particularly questionable and bothersome is the rationale by which the majority rules against the claimant, *i.e.,* "The Commission is well experienced in determining what circumstances warrant the imposition of attorney fees," citing *Troutner* for the first time at page 656 of 122 Idaho, at page 782 of 837 P.2d. The phrase apparently sounded so appealing that it was repeated a second time at the bottom of the page: "The commission 'is well experienced in determining what circumstances warrant the imposition of attorney fees,' and it determination, which required the weighing of the evidence and the balancing factors is supported by the record." 122 Idaho at 656, 837 P.2d at 782 (quoting *Quintero v. Pillsbury Co.,* 119 Idaho 918, 811 P.2d 843 (1991); *Troutner v. Traffic Control Co.,* 97 Idaho 525, 547 P.2d 1130 (1976)). Making that rationale unpalatable is the fact that the Commission over the years generally has been experienced, and for many, many years Idaho compensation claimants benefitted accordingly. But, it can be said that today's Commission is not on that footing because not all of the commissioners have long tenures of experience on the Commission. Is it not the fact that the decision of the Commission which this Court reviews is the decision of just two commissioners?

The majority's citation of *Quintero* and *Troutner,* per the Chief Justice, is readily understood by those who have the background for knowing. Beginning with *Quintero* and ending with *Bottoms,* it is as follows: "The decision to award fees pursuant to this section rests with the Idaho Code. Other than in clear cases we defer to the judgment of the Commission.... The Commission is well experienced in determining what circumstances warrant the imposition of attorney fees. Respondent's request for attorney fees is denied." *Troutner,* 97 Idaho 525, 547 P.2d 1130. *Troutner,* written by the Chief Jus-

The controversy arrived in this Court in a somewhat skewered condition. Before the Industrial Commission passed judgment on the claim, it was assigned to referee Peggy McMahon as hearing officer, and her responsibility was to draft of a proposed decision on the issue of State Insurance Fund's liability. Although what she wrote in regard to liability to address that issue because it would ripen only if surety was held liable for compensation.

Unfortunately, however, after she had rendered a sound decision on liability, she was elevated to an administrative position with the Commission and thereafter not involved. The Commission delegated referee Jon T. Bauman to prepare the opinion on the issue of surety's liability for attorney fees incurred by Agnes Trapp.

Referee McMahon's liability decision has *not* been challenged by either party. She did focus on an Arizona decision brought to her attention by both parties; in that manner the Arizona five factor rule surfaced in the written decision which she presented to the Commission, and which it adopted. There was no reason why that Arizona decision should not have been considered. It was cited to because both involved counsel thought *it would be helpful;* counsel for claimant used that exact phraseology. An extremely competent referee recognized that the Arizona rule was not incompatible with Idaho case law. She fully comprehended that it could be helpful, and the Commission thereafter did not disagree. She was also aware of this Court's then recent opinion, *Morgan v. Columbia Helicopters, Inc.,* 118 Idaho 347, 349, 796 P.2d 1020, 1022 (1990), and quoted from it:

> Thus, the inquiry to be engaged in by both the Commission and this Court when faced with cases of this sort is whether the departure from the claimant's employment became so personal that it broke the causal connection to such an extent that the resulting accident could no longer be said to 'arise out of and in the course of' the claimant's employment.

R. 58.[10] In her careful consideration of the *Morgan* decision, which related a synopsis of the *Ridgway* decision, she could not but

tice, utilized that very language in rejecting a claimant's request that attorney fees be paid by the surety following his success with his compensation claim. The surety for the construction company had not provided Troutner with needed surgical treatment. According to Justice Bakes, there were "indications" in the record that:

> Argonaut Insurance had not been able to complete its investigation of Troutner's activities of the previous year to determine whether he had been injured while in other employment, nor had it received a report from the treating physician. Without this information, the surety could not be certain that it was bound to provide the surgical treatment to Troutner.
> ....
> In light of the foregoing discussion, the conclusion of the Industrial Commission that Argonaut Insurance had not neglected or unreasonably delayed in its determination of Troutner's claim is supported by the record and will not be disturbed on appeal. Attorney fees are not granted to a claimant as a matter of right under the Idaho workmen's compensation law, but may be recovered only under the circumstances set forth in I.C. § 72–804. The decision that grounds exist for awarding a claimant attorney fees is a factual determination which rests with the Industrial Commission. *Mayo v. Safeway Stores, Inc.,* 93 Idaho 161, 457 P.2d 400 (1969); *Wilson v.*

*Gardner Associated, Inc.,* 91 Idaho 496, 426 P.2d 567 (1967). The conclusion of the Industrial Commission that no grounds existed for allowing attorney fees in this case is supported by substantial evidence and will not be set aside on appeal. Idaho Constitution, Art. 5, § 9; I.C. §§ 72–724, 732. Appellant's motion for attorney fees on appeal is denied. 97 Idaho at 527–28, 547 P.2d at 1132–33. In *Christensen v. Calico Construction Co.,* 97 Idaho 327, 543 P.2d 1167 (1975), Justice Bakes authored the Court's opinion which, citing another decision which he had written in 1973, *Bottoms v. Irrigation District,* 95 Idaho 487, 511 P.2d 304 (1973), included the following: "The language in our earlier cases such as [citations omitted] requiring not only notice to the employers or sureties, but in addition *consent* from them to obtain additional or different medical treatment, appears to be an unwarranted requirement not justified by the statute. However, because the claimant failed to notify his employer that the was seeking additional medical care, the employer and surety are not liable for those additional expenses." *Christensen,* 97 Idaho at 329, 543 P.2d at 1169.

10. The referee did *not* state that Agnes Trapp departed from her employment, and her decision was accordingly found that Agnes Trapp in driving from Sagle toward Spirit Lake was within the course and scope of her employment.

have been guided to the benefit of reading *both* of the *Ridgway* opinions, authored respectively by Justices Bakes and Bistline. Those two opinions somehow eluded her. Almost a full half page of *Morgan,* 118 Idaho at 349, 796 P.2d at 1022, was devoted to *Ridgway.* As is quite evident, in later writing the opinion for the Commission, she overlooked *Ridgway.* Having thus shorted herself from having the benefit of not just one, but two *Ridgway* opinions, she lamented that, "Aside from *Dameron, supra,* which addresses only a couple of factors, *Idaho does not have any case that has thoroughly explored the question of whether a car accident in which employees en route to a training session sustained injuries can be said to have arisen out of and in the course of their employment.*" R. 59. At that point, being uninformed as to what had been written in *Ridgway,* it was certainly in order to peruse an opinion cited by both involved counsel, *Stewart Mining Co., v. Industrial Commission,* 133 Ariz. 424, 652 P.2d 163 (1982). Utilizing it, she wrote out the rationale by which Agnes Trapp was entitled to compensation. McMahon found untenable the surety's contention that, "An accident which occurs while a claimant [sic, worker] is involved in an educational program is not compensable." McMahon was unable to discern any merit in the *Gentili v. University of Idaho,* 91 Idaho 116, 416 P.2d 507 (1966), decision, upon which the surety based its defense.

*Ridgway,* had it been observed by McMahon would have established that basically there was no need for resorting to Arizona's five factor rule. But, as earlier stated, the Arizona rule, because it essentially is the same as the rules which guide Idaho compensation case decisions, probably might be helpful or useful. For certain it does not conflict with Idaho case law precedent developed over the years.

## II. A COMEDY OF ERRORS

Referee Bauman, entrusted to write only on the attorney fee issue, wrote all over the field as is readily witnessed by the following passages which he proposed, and which the two Commissioners blithely signed onto:

[T]he underlying decision in this case relied heavily upon a test drawn from the decision of the Arizona Supreme Court in *Johnson Stewart Mining Co., Inc. v. Industrial Commission,* 133 Ariz. 424, 652 P.2d 163 (1982). The Referee who prepared the underlying decision in this matter declared that '[A]side from *Dameron, Supra,* which addresses only a couple of factors, **Idaho does not have any case that has thoroughly explored the question of whether a car accident *in which employees en route to the training sessions sustained injuries can be said to have arisen out of an in the course of their employment.*'** Findings of Fact, Conclusions of Law, and Order at p. 10.

Referee Bauman obviously did not read the briefs of counsel, but was content to base his proposed decision on the statutory claim for fees on his reading of McMahon's decision. The second paragraph of Bauman's rationale reads:

It was none other than the claimant who first directed the Commission's attention to this authority from the State of Arizona, which was subsequently relied on to reach the decision favorable to the Claimant in the underlying matter. Now the Claimant asserts that the Defendants should not have done what Claimant herself did, namely, resort to out-of-state authority to assess the validity of this claim. Evidently, the Claimant [Agnes Trapp] was not sufficiently convinced that the law in *Dameron, Scrivner, Zeier,* and *England* was certain to govern the outcome of this case that she was willing to forego a discussion of not one, but a number of cases drawn from other jurisdictions, including *Johnson Stewart.* The Claimant's counsel was sufficiently impressed with the decision of the Arizona Supreme Court in *Johnson Stewart* that he went to the trouble of applying all of the five factors articulated by the Arizona Supreme Court to the facts presented in this case.[11]

---

**11.** The first sentence in this paragraph is true,

particularly in that referee McMahon did rely

R. 99–100 (emphasis added). Obviously, the foregoing had nothing to do with the second issue, that of recompensing the claimant for incurred attorney fees, that being the only issue left for adjudication. The latter paragraph is particularly offensive as amounting to nothing but a meaningless diatribe. It establishes nothing. It accuses Agnes Trapp (through counsel) of inviting attention to the Arizona case, and then reneging on it being used, truly a puerile exercise in asininity. Whatever else it might be called, and valueless that it may be, it does not rise to the level of sound *legal* argument.

What is equally unacceptable is the hypothesis by which the Court, in its turn emulates the surety and the Commission in readily seizing upon the Arizona five factor test as a purported valid predicate for denying her claim for statutory attorney fees. That issue was secondary to and entirely independent of the underlying issue of surety's liability for a compensable industrial accident; that earlier issue had been decided. It is very disheartening to observe the Commission, and, in turn members of the Court, being taken in by such shenanigans.

Available in the claimant's brief, filed with the Commission, is the manner in which the five factor Arizona *Johnson Stewart* case found its way into Idaho litigation: claimant's attorney cited it for its holding "that *workers who were injured while returning from an educational seminar, after working hours, sponsored by the manufacturer of equipment used by their employer, who attended at the request of their foreman, were injured in the course of their employment."* R. 12. Counsel for Agnes Trapp, being aware of that result in Arizona, and certainly knowledgeable that Idaho courts do cite Arizona law when it is seen as both sound and applicable to an Idaho set of facts, visualized that a comparison of the Trapp case to the *Johnson Stewart* similarities might be of benefit to the Commission. In the brief for the Commission on the first issue, liability, it said only that "It might be helpful to set forth the five factors the Administrative Law Judge listed in that Arizona case, *and see how the claimant matches up."* R. 15. Claimant's counsel proceeded to illustrate that there was indeed a match up.

McMahon, who wrote the Commission's decision on the issue of the surety's liability for payment of compensation authored a well-considered decision. That decision, pertinent to only the liability issue has not been further challenged by the surety. Unlike Bauman, McMahon stated as to the Arizona *Johnson Stewart* case this, and only this:

> Both parties, in briefs before the Commission detailing Idaho cases, found it useful to address the five factors set forth by the Arizona Supreme Court in a case involving claimant hurt in an accident on the way to a seminar.[12]

on the Arizona case in her written decision. It would have been better if she had added the prefix to claimant's submission which also appears infra, "It might be helpful to set forth the five factors ... in the Arizona case, and see how the claimant matches up." R. 15. Even better than that, would be that she had chanced to read the fifteen year old *Ridgway* opinions. As it is, however, McMahon did write the Trapp decision on liability, and it was unassailable. Taken as a whole Mr. Bauman's longer paragraph does nothing more than foolishly try to make a mountain out of a molehill, sniping at Agnes Trapp's compensation claim, all the while *deceptively* avoiding our *Ridgway* decision, which was referred to in the briefs of both the claimant's attorney and counsel for the surety.

What referee Bauman and the Commission made of counsel citing an applicable case is asinine. The function of counsel is to bring a trial court's or commissioner's attention to applicable case law precedent.

12. There is of course no distinction between "hurt in an accident on the way to a seminar" (*Johnson Stewart*), and "while at a seminar hurt in an accident while going or coming from a restaurant where food was available" (*Ridgway*). There is no discernible difference on viewing referee McMahon's "found it useful" and counsel for Trapp's "It might be helpful." What Bauman would make of the Florida Court of Appeals, First Division, on two occasions citing to and relying upon *Ridgway*, an Idaho decision, perhaps will one day be known. *Eastern Airlines v. Rigdon*, 543 So.2d 822 (Fla.1989), and *Jean Barnes Collections v. Elston*, 413 So.2d 797 (Fla.1982). As a general proposition, courts receiving briefs are gratified to be informed of any applicable citation which may be useful, whether needed or not.

"Quoth the raven, nevermore." Like the raven, McMahon spoke no more on the Arizona case. Bauman, however, spoke on. Two attorneys were agreed that the Arizona five factor rule might be useful, and accordingly submitted it. McMahon included it in her opinion only on the issue of liability for compensation. Bauman provided the Commission with this ludicrous rationale as his proposed basis for a Commission decision denying Agnes Trapp's claim for attorney fees:

> We further conclude that the conduct of the Surety in contesting the claim for worker's compensation benefits was not unreasonable. Attorney fees are not awarded as a matter of right, but must be allowed by statute. *Troutner v. Traffic Control Company*, 97 Idaho 525, 547 P.2d 1130 (1976); *Murphy v. D & K Land Company*, 87 IWCD 95, p. 1604 (July 1987).
>
> Section 72–804, Idaho Code, upon which Claimant relies, authorizes an award of attorney fees on several grounds, only one of which has been raised by the Claimant, namely, "that the employer or his surety contested a claim for compensation made by an injured employee ... without reasonable ground,...." (ellipses in original). Claimant's Brief—Attorney Fees [sic], p. 1.

The sole question submitted to the Commission in this matter was purely a question of law. The parties had filed a joint stipulation of facts, which was adopted by the Commission in its Findings of Fact. The remaining issue before the Commission concerned an exception to the 'going-and-coming' rule, *which had not been precisely addressed in any case previously decided by this Commission or the Idaho Supreme Court.*

In its Conclusions of Law, we cited *Zeier v. Boise Transfer Co.*, 43 Idaho 549, 254 P. 209 (1927) and *Morgan v. Columbia Helicopters, Inc.*, 118 Idaho 347, 796 P.2d 1020 (1990) to observe that the outcome in disputes of this kind depends more on the weighing of a series of factors of reasonableness than on the application of mechanical rules. Findings of Fact, Conclusions of Law, and Order, p. 9.

A test requiring the application of several criteria to the facts is by its nature more complex to administer than a mechanical rule. It follows that the outcome is also less susceptible of advance determination. Thus, even in this case where the facts are undisputed [the facts were stipulated by counsel], *as the law's direction is less clear, we are also less disposed to challenge as unreasonable the judgment of a surety who denies a claim on legal grounds.*

This case involved an application of the so-called 'going-and-coming' rule, which, as we noted, has itself spawned 'exceptions and exceptions to exceptions, one being the special errand rule.' Findings of Fact, Conclusions of Law, and Order, p. 8.

*The precise legal question before us had never been addressed by the Idaho Supreme Court.* The most recent analogous decision, *Dameron v. Yellowstone Trail Garage*, 54 Idaho 646, 34 P.2d 417 (1934) was decided more than 50 years prior to denial of the claim. We determined that a more comprehensive approach than that taken by the court in *Dameron* was required in order to resolve this case. The parties evidently were of the same mind, inasmuch as the briefs of both sides discussed authority from other jurisdictions, including a test drawn from the decision of the Arizona Supreme Court in *Johnson Stewart Mining Company, Inc. v. Industrial Commission*, 133 Ariz. 424, 652 P.2d 163 (1982). That standard, which involved the application of five factors, was ultimately adopted by the Commission to decide this case.

To the extent that *Idaho law is not sufficiently precise* to enable us adequately to address the issues raised in a particular case, persuasive authority from *other jurisdictions and sources must be consulted.* To the same extent, the *question of law addressed by the*

*Commission is therefore a question of first impression.*

It is well-established that a surety does not act unreasonably in denying a claim for worker's compensation benefits *when the claim involves a question of law which the Idaho Supreme Court has never decided. In re Hillenbrand's Death,* 80 Idaho 468, 333 P.2d 456 (1958); *Malueg v. Pierson Enterprises,* 111 Idaho 789, 727 P.2d 1217 (1986). Accordingly, the conduct of the Surety in this case was not unreasonable.

For the foregoing reasons, Claimant's Motion for Attorney fees should be, and the same is hereby DENIED.

R. 87–89 (emphasis added).[13]

There is nothing of substance in what Bauman has written. It is a devastation, which on being signed by the two Commissioners, denigrated the lofty purposes and goals of the Workers' Compensation Act. The *ratio decidendi* concocted by Bauman does not withstand even a cursory examination. Its ready adoption by two Commissioners was a tragedy; today's ready ratification by a majority of this Court is a travesty, one which Agnes Trapp may be able to put out of her mind while she is at the same time putting out of her pocket the money to pay an attorney for successfully pursuing her compensation claim against the resistance of the surety's spurious defense, *i.e., Gentili v. University of Idaho,* 91 Idaho 116, 416 P.2d 507 (1966), a single reading of which discloses its total inapplicability to the facts and circumstances of this Trapp controversy.

Were Justice Bakes making his own independent review of this controversy, as he generally does, he, the author of *Ridgway,* more than any other trained legal mind, would readily see how the two Commissioners went awry in seizing on *Bauman's*

preposterous conclusion that the *1934 Dameron* opinion was the most recent analogous decision, and, moreover, endorsed it with their signatures. Unfortunately one of those commissioners, for whom the trial bench and bar have great respect, was a commissioner when *Ridgway* was issued. Bauman's statement has done great mischief, and clearly evidences that at times pertinent he was totally uninformed as to the content of the briefs of involved counsel. The *most* analogous decision was Justice Bakes' decision *Ridgway,* and just a few months before that decision, equally analogous was Justice Shepard's decision in *Clark v. Daniel Morine Const. Co.,* 98 Idaho 114, 559 P.2d 293. After *Ridgway* came Justice Huntley's opinion in *Kirkpatrick v. Transtector Sys.,* 114 Idaho 559, 759 P.2d 65 (1988). All of those cases involved an exception to the coming-and-going rule.

Although his *Ridgway* opinion when undiscussed and unmentioned in the decisions of the two referees, and in turn, equally ignored by the two Commissioners in their final order refusing to reconsider the order denying attorney fees, the Chief Justice continues to insist that *Ridgway* is still as intact as it was when written. If that be so, why isn't his vote forthcoming that the cause be remanded to the Commission for reconsideration which includes *Ridgway?*

No one in today's majority denies that the claimant's opening brief in the Commission proceedings brought into play both *Ridgway* and the later case, *Kirkpatrick v. Transtector,* 114 Idaho 559, 759 P.2d 65. Justice Huntley, in authoring the *Kirkpatrick* opinion for the Court, turned to the leading Idaho compensation case: *Ridgway.* Equally succinct and to the point as was Justice Bakes in authoring *Ridgway,* Justice Huntley's opinion was short and concise:

> [fatal] injury was within the course of Henderson's employment.
>
> *Id.* 524 P.2d at 1334. That opinion explains that the proper analysis hinges on an "accident arising out of and in the course of employment." *Id.* at 1333. As conceded earlier in this opinion, there is no incompatibility because Arizona's five factor rule is not a problem, and likely is helpful and useful.

---

**13.** The only holding in *Truck Ins. Exch. v. Industrial Comm'n.,* 22 Ariz.App. 158, 524 P.2d 1331 (1974), is:

> We therefore *hold* that the indicia of employment-related activities present here are such as to justify the Commission in finding that the petitioner's employer had expanded the normal duties associated with a car salesman so as to embrace auto racing and that the

KIRKPATRICK WAS OPERATING IN THE COURSE AND SCOPE OF HIS EMPLOYMENT AT THE TIME OF THE ACCIDENT

This Court's scope of review over findings of fact made by the Industrial Commission is limited. Factual findings will be upheld on appeal if supported by substantial, competent evidence. *Nigherbon v. Ralph E. Feller Trucking, Inc.*, 109 Idaho 233, 706 P.2d 1344 (1985); *Lopez v. Amalgamated Sugar Co.*, 107 Idaho 590, 691 P.2d 1205 (1984).

Here, the Industrial Commission relied upon the 'travelling employee' doctrine, which provides that when an employee's work requires him/her to travel away from the employer's premises, he/she will be held to be within the course and scope of his/her employment continuously during the trip, except when a distinct departure for personal business occurs. For example, under the 'traveling employee' doctrine, injuries which arise out of necessities such as sleeping or eating are compensable. *Ridgway v. Combined Insurance Companies of America*, 98 Idaho 410, 565 P.2d 1367 (1977). See also, *Manion v. Waybright*, 59 Idaho 643, 86 P.2d 181 (1938), wherein this Court established a rebuttable presumption that an employee driving an employer's car is operating in furtherance of the employer's business. Here, the 'travelling employee' doctrine is merely an additional rationale under which liability could have been imposed upon Transtector. The Commission specifically found that 'at the time of the accident, the claimant was discussing business with a co-worker in a company-provided car.' These facts are supported by substantial, competent evidence and, irrespective of the 'traveling employee' doctrine, they impose liability upon Transtector for Kirkpatrick's injuries sustained during the accident. The record further shows that, while discussing business, Kirkpatrick and Hadley had driven to downtown Columbus to locate the offices of the businesses with which they would be meeting on Monday, November 12, 1984. The Commission's finding that Kirkpatrick was operating within the course and scope of his employment at the time of the accident is affirmed.

ATTORNEY FEES

The Commission ordered attorney fees pursuant to I.C. § 72–804 in the amount of 25% of all benefits paid in the past and to be paid in the future to Kirkpatrick, concluding that there were no reasonable grounds upon which their Application for Hearing could have been brought. We agree. However, we also agree with Transtector and General, and Kirkpatrick concedes, that the attorney fees should only be based upon a percentage of compensation paid from the time Transtector's Application for Hearing was filed, May 21, 1986. As the Commission has deemed 25% a reasonable percentage of the compensation paid to be awarded, we hold that percentage appropriate and order that attorney fees in the amount of 25% of all compensation paid to Kirkpatrick by Transtector and general from the date of May 21, 1986, be awarded.

As we agree with the Commission that the proceeding was brought [sic, defended] without reasonable ground, we necessarily conclude that the appeal was also brought without reasonable ground, with the exception of our slight modification of the attorney fees award. Accordingly, we also award attorney fees on appeal pursuant to I.C. § 72–804, and order attorneys for respondent Kirkpatrick to submit to this Court an accounting of fees incurred in preparing for and arguing as to each of the issues before this Court on appeal. We will then make an award of attorney fees which accounts for Transtector's legitimate and reasonable argument on the attorney fee issue. Costs to respondent.

*Kirkpatrick*, 114 at 562–63, 759 P.2d at 68–69 (footnote omitted).

Make no mistake about it, there was much amiss in the Commission's handling of Agnes Trapp's compensation claim. At page 8 of her brief furnished to the Commission, R. at 13, it is stated concisely and

accurately that both *Ridgway* and *Kirkpatrick* were holdings that one who travels for his employer *is covered* during such travel. The same brief alerted the Commission to a then recent case from the Idaho Court of Appeals, *Wise v. Arnold Transfer & Storage Co.*, 109 Idaho 20, 24, 704 P.2d 352, 356 (1985), which cited *Ridgway* as the basis for its holding affirming a summary judgment granted in Daniel Wise's tort action, "It has been established that employees whose work involves travel are held to be within the course of their employment except when the employee makes a distinct departure on a personal errand."

Trapp's brief submitted to the Commission, R. 13–14, should have served to give Commissioners Geddes and Lanham some concern. That brief quoted from 1 Larsen's Workmen's Compensation Law, § 25.-00, at 5–275 (1990), which was directly quoted from in Justice Bakes' *Ridgway opinion:*

> The appropriate rule to be applied to determine the scope of workmen's compensation coverage for employees whose work entails travel away from the employer's premises at which the employee normally works is set forth in 1 Larsen, Workmen's Compensation Law, § 25.00, p. 443.

*Ridgway*, 98 Idaho at 411–12, 565 P.2d at 1370–71. Larsen was apparently considered good authority, as witnessed by Justice Bakes' reliance thereon. At that point in the opinion, he provided the same quotation which claimant's trial brief emphasized by illustrating it as the black letter law, as follows:

> **Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown. Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable.**

Claimant's Brief, at 9; R. at 14 (quoting from *Ridgway*, 98 Idaho at 412, 565 P.2d at 1371) (emphasis in claimant's brief).

Contrary to referee Bauman's assertion, both the majority and plurality opinions in *Ridgway*, did address "the precise legal question." The two *Ridgway* opinions, taken together or separately, constituted respectable Idaho authority predicated on prior Idaho holdings, and both are sound in analysis and far more recent than the 1934 *Dameron* decision, the authority to which referee Bauman resorted, apparently because he did not bother to read the briefs provided by both counsel.

The *Ridgway* opinions should have at a glance cautioned State Insurance Fund that in accepting money from Sagle Volunteer Fire Department in exchange for the State Insurance Fund's compensation policy, it was agreeing to pay just claims for compensation. The Fund has been in business for many years. Past experiences alerted it to know of its exposure to paying attorney fees when it failed or refused to paying a compensation claim. There is no conflict in the two *Ridgway* opinions, and the Idaho authority relied upon in *Ridgway* included *Clark v. Daniel Morine Const. Co.*, 98 Idaho 114, 559 P.2d 293, with a *Cf.* to *Wineland v. Taylor*, 59 Idaho 401, 83 P.2d 988 (1938). Justice Bakes wrote *Ridgway*, and it is a succinct, sound opinion. The plurality opinion attributed to Justice Bistline, joined by Justice Donaldson, was more expansive, providing to the trial bar and the Industrial Commission an authoritative summary of the development of Idaho's workers' compensation law, including also Justice Frankfurter's construing of the Longshoremen's and Harbor Workers Compensation Act, which is identical to Idaho's Workmen's Compensation Act:

> Workmen's Compensation is not confined by common-law conceptions to scope of employment. (Citations omitted.) The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. (Citations omitted.) Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the

"obligations or conditions" of employment created the "zone of special danger" out of which the injury arose.... This is not to say that there are not cases "where an employee, even with the laudable purpose of helping another, might go so far from his employment and become so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment." *Matter of Waters v. William J. Taylor, Co.*, 218 N.Y. (248) at page 252, 112 N.E. (727) at page 728 [1916]. [*O'Leary v. Brown–Pacific–Maxon, Inc.*], 340 U.S. [504] at 506–507, 72 [71] S.Ct. [470] at 471–472 [95 L.Ed. 483 (1951)].

*Ridgway,* 98 Idaho at 416–17, 565 P.2d at 1373–74.[14]

**14.** As earlier mentioned, just four months prior to issuing *Ridgway,* this Court had before it another traveling employees compensation controversy, *Clark v. Daniel Morine Const. Co.*, 98 Idaho 114, 559 P.2d 293 (1977), also a worker's appeal from a Commission decision which absolved USF & G of liability for payment of compensation. The Court held, per Justice Shepard, based on the opinion testimony of the two other drivers, that:

The Industrial Commission found that the road presented no peculiar difficulty for a driver. That finding is sustained by the evidence and will not be disturbed on appeal. I.C. § 72–732; *See also, Gradwohl v. J.R. Simplot Co.*, 96 Idaho 655, 534 P.2d 775 (1975); *Johnson v. Boise Cascade Corp.*, 93 Idaho 107, 456 P.2d 751 (1969). In the absence of a finding of a special exposure to a hazard or risk peculiarly associated with employment, the general rule is prevailing. Affirmed.

*Clark,* 98 Idaho at 115, 559 P.2d at 294. Earlier in that opinion Justice Shepard provided the underlying circumstances:

On June 4, 1975, the decedent Leslie Clark agreed to begin work for respondent Daniel Morine Construction Company at 7 a.m. of the following day as a bulldozer operator at a remote work site in the Clearwater National Forest. Such agreement was reached between the parties at Coeur d'Alene, Idaho, which is over 200 miles from the work site. At 2 p.m. on June 4, Clark left Coeur d'Alene in the company of two other vehicles owned by Morine. Although not required to do so, since Clark knew the general area around the work site, he agreed to follow the other vehicles.

After the vehicles passed Headquarters, Idaho, they travelled a winding, twisting, one-lane, improved forest road which in part paralleled the Clearwater River. That road had been recently graded, was open to the public as well as to Forest Service employees and loggers, and was described as well travelled. While traversing a stretch of road which was fairly straight and approximately 20 feet in width, Clark's pickup inexplicably left the road and went into the river. The time of the accident was fixed at approximately 11 p.m.; the night was extremely dark and the personnel in the preceding vehicles were not aware of the accident. Clark's body was not recovered until some days later, and the cause of death was attributed to drowning.

Appellant's argument is essentially that the travel time, the darkness, the dust and the inherent danger presented by a winding road bounded on one side by mountains and on the other by the river presented a special exposure to a hazard or risk peculiarly associated with the employment. *Thus, it is argued, this case falls outside the rule that travel to and from work is not covered by workmen's compensation protection.*

Generally it is *presumed that an employee travelling to and from work is not within the course of employment* and thus not covered by workmen's compensation protection. However, an exception to that rule does exist when such travel involves special exposure to a hazard or risk peculiarly associated with the employment and that risk is causally connected to the accident. [Citations omitted.]

*Clark,* 98 Idaho at 114, 559 P.2d at 293 (emphasis added). Thus, by application of a general presumption, the wife and children of Leslie Clark were deprived of their entitlement to benefits under the workers' compensation law.

As applied to the instant *Trapp* case, the *Clark* decision is to be noted, not as concerns a surety's liability, but as yet another case, far more recent than the 1934 *Dameron* said by the State Insurance Fund to be a recent analogous case, which contains a discussion of the traveling employee general rule, and the exception thereto, which, as Justice Shepard worded it, "exists when such travel involves special exposure to a hazard or risk peculiarly associated with the employment and that risk is causally connected to the accident." 98 Idaho at 115, 559 P.2d at 294.

Application of available existing precedent was convincing that *Clark* was wrongly decided. The correct disposition of that case was stated very simply in a dissenting opinion:

As recently as November, 1975, this Court stated what I take to be the most fundamental principles of construction which must guide us in applying Idaho's workmen's compensation law, namely, that

'... there should be accorded to the Workmen's Compensation Act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for

The words "arose out of and in the course of [his] employment" come directly from the statute. In the pages which proceeded that conclusion, there is set forth a veritable historical treatise on the status of the law, *all of which in today's Trapp*

> narrow technical construction.' *Goodson v. L.W. Hult Produce Company*, 97 Idaho 264, 543 P.2d 167, 169 (1975).

My research leads me to conclude that 'the going-and-coming rule,' as applied outside the context of routine commuter accidents, no longer carries out these fundamental policies. In this case in particular, it has led to the unjust result of denying compensation to Leslie Clark's widow.

Morine required Clark's services as the operator of the bulldozer at 7:00 o'clock a.m., some 200 miles distant. Clark's accidental death occurred incidental to the travel required of him to be on the job and ready to start piling brush. What this case is not is a commuter case. A case with a fact pattern similar to the one here is *Jackson v. Long*, 289 So.2d 205 (La.App.1974). In that case, Manpower of New Orleans was under contract with a utility company in Gulfport, Mississippi, to supply two cooks for service crews doing repair work in the aftermath of Hurricane Camille. The cooks filled out their work papers, were dispatched from New Orleans, were making the 75 mile trip in their own vehicle and were to report to the on-site supervisor. Injuries were sustained in a car crash en route. As in the present case, actual work would not begin until arrival at the site, no travel expenses were to be paid, and the cooks were to be paid only for the actual hours worked. Manpower, like Morine, thus attempted to 'disassociate itself from any responsibility for transporting its employees.' The court ruled that even under such circumstances, the 'traveling was an integral part of this employment contract.' The court then held, in language notably similar to that this Court has in the past used:

> 'Since the travel was in furtherance of the employment by the general employer, the risk of accident during travel was a risk interrelated with the nature of the employment, and the plaintiff was protected while traveling to the assigned place of work in obedience to the employer's instructions *and for the employer's benefit.'* (Emphasis added.) *Jackson v. Long*, 289 So.2d at 208.

Mention should also be made that it was not crucial to a proper determination of this case as to what caused Clark's accident. It will never be known, but it is not important. What is important is that his job commitment, based on his employer's contractual commitment to the Forest Service, required that Clark be on that dozer at 7:00 o'clock a.m. the early morning on the day following his being hired. The accident could have been occa-

*controversy should have served to guide State Insurance Fund into recognizing its liability* and settling with her. But no, not to be. The Fund placed her in a position of dropping her claim for compensation, or incurring the expense of hiring an attorney.[15] It should be a given that where

sioned by any number of things: a deer may have suddenly run on the roadway, causing a swerve to avoid it; another vehicle could have forced him over; the vehicle's steering apparatus could have failed; fatigue may have overcome him; a tire may have blown out— all of which is of no consequence in a workmen's compensation case.

In *Stover v. Washington County*, 63 Idaho 145, 118 P.2d 63 (1941), a county commissioner was killed at a railroad crossing while trying to get from his home to the highway. This Court, unanimously speaking through Justice Ailshie, stated:

> 'It is clear that the business of the employer (Washington county) was the cause and active incentive for decedent starting on the trip that morning to the courthouse; *except for the employment, he would not have been on that trip,* ... We conclude that decedent, at the time of the accident and resultant injury, was pursuing the course of his employment.' (Underscoring mine.) 63 Idaho at 152, 118 P.2d at 66.

In *Murdoch v. Humes & Swanstrom*, 51 Idaho 459, 6 P.2d 472 (1931), this was said:

> '... deceased was furthering his master's interest and carrying out part of his duties as an employee; ...' 51 Idaho at 468, 6 P.2d at 475.

The coming-and-going rule should be discarded. I would reverse the decision of the Commission, which decision I feel the Commission made only because of pronouncements of this Court, and I would remand the case to the Commission to reach a determination as to whether or not Clark's accidental death arose out of and in the course of his employment.

*Clark*, 98 Idaho at 123–24, 559 P.2d at 302–03 (Bistline, J. dissenting).

15. The State Insurance Fund, which has become *much esteemed since it has been guided by its* present administrator, has in this case deliberately and without good reason, resisted a simple, obviously just claim for compensation, which clearly falls within the provisions of I.C. § 72–804. Similarly questionable was its conduct in putting juror Iris Yount to legal action in order to obtain compensation for an injury sustained while on jury duty. *Yount v. Boundary County*, 118 Idaho 307, 796 P.2d 516 (1990). In *Yount*, however, fairness requires the revelation that most states had denied compensation coverage to jurors. As is readily seen by perusing *Yount*, "most states" were guilty of piggy-

she *has* pursued her compensation claim, and has prevailed, application of I.C. § 72–804 should have compensated her for whatever reasonable expense she had been put to by the Fund's unreasonable defense predicated on *Gentili v. University of Idaho*, 91 Idaho 116, 416 P.2d 507 (1966).

Where the Commission ruled that "[Trapp's] travel at the time of the accident was within the 'going-and-and coming rule' exception to compensability," the only single issue remaining then was whether the Fund was possessed of a reasonable defense, and if so, what was it? Clearly she should not have been required to prove the obvious, namely, that the accident occurred *not* while going to a place where she was *regularly* employed, or coming therefrom. Equally clear, Trapp was injured while within the "special errand" exception to the going-and-coming rule as to compensability. *Cf. In re South*, 91 Idaho 786, 430 P.2d 677 (1967); *Curtis v. Shoshone County Sheriff's Office*, 102 Idaho 300, 629 P.2d 696 (1981).

This Court cannot in good conscience uphold the Commission in ratifying the surety's refusal to comply with its statutory obligation to pay the attorney fees which Agnes Trapp became obligated to pay in order that her claim for compensation would be adjudicated. There is nothing of substance which supports the majority's bald statement that "the conduct of the surety in this case was not unreasonable." Otherwise put, are we telling the claimant that its conduct was reasonable, and, if so, on what hypothesis was it reasonable? Trapp was entitled to prevail in accordance with Idaho precedent, and she did so prevail. The injection of the Arizona rule into the attorney fees issue by the referee writing the Commission's decision is aught but an odious red herring.

For absolute certain, in no way did the introduction of the appellate court decision from Arizona have any bearing whatever on the issue of claimed attorney fees. The decision as to liability was fairly and properly rendered. The State Insurance Fund

backing opinions of other states, which is an easy way to go, but not necessarily commend-

had played out its hand, and lost. It could have gained credit by forthwith tendering payment of fees, but it declined the opportunity. Today, if the Court membership were of a proper mind, in addition to directing that the trial court make a suitable award for such fees at that level, this Court would award attorney fees on appeal, and further a separate assessment of attorney fees would be imposed as a sanction for State Insurance Fund having conducted a spurious defense at trial.

Only in that manner can the message be sent out that this Court intends to see that compensation claimants are to be treated fairly. Idaho Code § 72–804 dictates that the employer/surety shall pay reasonable attorney fees in addition to the compensation, a decision which *this Court* is as entitled to make as is the Commission, when it appears that the claim for compensation has been unreasonably contested.

### APPENDIX A

Before the Industrial Commission of the State of Idaho

Agnes L. Trapp, Claimant,

v.

Sagle Volunteer Fire Department, Employer,

and

State Insurance Fund, Surety, Defendants.

I.C. No. 90–709777

Nov. 5, 1990.

### STIPULATION OF FACTS

The parties, through their attorneys, do hereby stipulate the following are the facts in the above-entitled matter, and this stipulation also constitutes a stipulation of facts in IC 90–709778, IC 90–709779, and IC 90–709825. The parties agree the sole issue to be determined by the Commission at this time is whether the claimants' injuries were caused by an accident arising out of and in the course of their employment.

able when injustice is being administered injudiciously.

On January 4, 1990, at about 6:10 p.m., on Highway 95 in Careywood, Bonner County, Idaho, claimants, in an automobile driven by Agnes Trapp, were proceeding south when a northbound automobile crossed into their lane of travel crashing into them. All five claimants in Agnes Trapp's vehicle suffered injuries.

On November 14, 1989, claimant had completed an application for employment with Sagle Volunteer Fire Department. At the same time, she signed with her employer a Statement of Intent, which was a prerequisite to enrollment in an Emergency Medical Technician (EMT) course scheduled to be held over a period of some months in Spirit Lake, Idaho. The first class was scheduled for November 16, 1989. A copy of the documents signed by claimant is attached to this stipulation as Exhibit A.

Each of the other occupants in the car had signed the same documents, and all five occupants were enrolled in the EMT course. They were on the way to the January 4, 1990, meeting at Spirit Lake at the time of the crash.

It is a precondition to eligibility for enrollment in the EMT course that the individual be sponsored by a Quick Response Unit (QRU). At the time claimant and her passengers signed their Statement of Intent, Sagle's QRU had only four EMTs. In order to remain viable the QRU needed eight EMTs. In order to become members of the QRU, claimant and the others had to enroll in and complete the EMT course. The Fire Department, which at the time claimant and her passengers joined was critically short of trained EMTs, solicited claimant and her passengers to join the department and its QRU, and to enroll in the EMT course. As shown in the exhibits attached, they also all agreed to remain members and make themselves available as EMTs for two years after completion of the EMT course.

In addition to the written documents attached as Exhibit A, there was an oral agreement between claimant (and the others) and Sagle Volunteer Fire Department that upon completion of the EMT course, it would pay the enrolled member the $60 class fee, and pay the member the cost of acquiring a blood pressure cuff and stethoscope. It is stated in the Sagle bylaws that after completion of two years EMT service, the items of property would belong to the individual EMT.

The Sagle Fire Department has 20 volunteer members and covers a district from Sandpoint to the Kootenai County line ten miles on each side of Highway 95. In October 1989 the Emergency Medical Technician (EMT) count was down in the volunteer fire department due to a lack of certified EMTs. At the time, an EMT course was being promoted at the Spirit Lake Fire District office. The Sagle Fire Department wanted to increase its EMT count and, therefore, inquired as to the individuals who were volunteer firemen if any of them wanted to get involved with the EMT program. The claimants, all volunteer recruits of Sagle Volunteer Fire Department, responded that they all desired to take the class. Recruits must attend four fire department meetings before becoming certified volunteer firemen. This had occurred as to claimants before the accident. None of the volunteer firemen for the defendant employer herein, including the claimants, were required to take the EMT course and the EMT course was not directly a part of the duties of the volunteer firemen. Because they signed up for the course, the claimants were "sponsored" by the QRU of the Sagle Fire Department. This is because *all* students had to be "sponsored" by a Quick Response Unit, whether or not that QRU was a part of a fire department, hospital, ambulance service, or other entity, even if that student *was not* an employee of the particular sponsoring agency or entity. Each claimant signed an agreement to stay with the fire department QRU for two years in order that their skills could be utilized. (See the Statement of Intent marked as part of Exhibit A and attached hereto.) The EMT course was of benefit to each claimant in

that each claimant became trained as an Emergency Medical Technician. The course was also a benefit to the employer as evidenced by the Statement of Intent form attached hereto, and otherwise as set out above.

The EMT classes were held in Spirit Lake and were to continue from November 16, 1989, into April of 1990. The EMT course consisted of 140 hours of classroom work and required books and qualified instructors. The tuition cost of $60 was paid by each claimant with the understanding that Sagle Fire Department would reimburse the claimants the $60 upon their successful completion of the course. The claimants were not reimbursed for out-of-pocket expenses, such as gasoline and mileage to and from the EMT course-site, by Sagle Fire Department.

Defendant employer had no vehicles satisfactory for group travel over a substantial distance, and needed what vehicular equipment it had for emergencies.

On January 15, 1990, claimant signed a Notice of Injury and Claim for Benefits, which was also signed by Fire Chief Helms as representative of the employer. A copy is attached marked Exhibit B. During January, 1990, all other claimants did likewise.

Dated this 1st day of November, 1990.

/s/John T. Mitchell
John T. Mitchell
Attorney for Claimants

/s/Max M. Sheils, Jr.
Max M. Sheils, Jr.
Attorney for Defendants

APPENDIX A

STATEMENT OF INTENT

I, _Agnes L. Trapp_ wish to enroll in the E.M.T. class to be
(NAME)

held in _Spirit Isle_ beginning approximately
(location)

_11-16-89_
(date)

At the completion of this course, I plan to become a member of

_Sagle Fire QRU_ and remain active for two years unless
(unit)

physically unable to (change of address, illness, injury, etc).

I understand that should I not fulfill this commitment my certification

becomes inactive and recertification not possible until such time as I

again become active with an E.M.S. unit. I am also aware that (30) hours

of continuing education is required every two years to recertify.

_Agnes L. Trapp_
Signature of Applicant

DISSENTING OPINION ON DENIAL
OF REHEARING

BISTLINE, Justice, dissenting on denial of rehearing.

My disappointment in the majority's action today is not rooted in the fact that it has ignored what I have had to say about this case, but rather that it has totally disregarded the arguments found in the appellant's cogent petition for rehearing.

Ms. Trapp first reminds the Court of our statement in *Sprague v. Caldwell Transportation Inc.*, 116 Idaho 720, 779 P.2d 395 (1989):

> The provisions of the Worker's Compensation Law are to be liberally construed *in favor* of the employee. *Jones v. Morrison–Knudsen, Co.*, 98 Idaho 458, 567 P.2d 3 (1977); *Burch v. Potlatch Forests, Inc.*, 82 Idaho 323, 353 P.2d 1076 (1960). Liberal construction in favor of the worker is required to enable the act to serve the humane purpose for which it was promulgated, "leaving no room for narrow, technical construction." *Hattenburg v. Blanks*, 98 Idaho 485, 485, 567 P.2d 829, 829 (1977).

116 Idaho at 721, 779 P.2d at 396 (emphasis in original). Then she goes on to argue:

> What the majority has done in the opinion is to totally disregard this stricture. The majority has, in a case where all the facts had been stipulated, ruled that the Industrial Commission's conclusion of law that the surety did not act unreasonably is entitled to be treated as a finding based upon "substantial evidence." Such is just not the case here. There was ample precedent to point State Insurance Fund to the unmitigated truth that claimant was covered.

Petition for Rehearing pgs. 2–3.

This Justice agrees with Ms. Trapp. Accordingly, I dissent from the denial of the petition for rehearing.